433 So.2d 289 (1983)
David M. VALENTINE
v.
Dr. John A. THOMAS and ABC Insurance Company.
No. 82 CA 0742.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
Rehearing Denied June 29, 1983.
*290 Stephen C. Sledge, Hammond, for plaintiff-appellant David M. Valentine.
Donald T.W. Phelps, Baton Rouge, for defendant-appellee Dr. John A. Thomas.
*291 Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge:
This is an appeal from a judgment maintaining the exception of prescription filed by defendant, Dr. John A. Thomas.
The following facts were stipulated to by the parties and filed with the trial court:
1. Plaintiff was admitted to Doctor's Memorial Hospital on November 24, 1977, suffering from a traumatic acromioclavicular separation.
2. On November 25, 1977, Dr. John Thomas surgically repaired the acromioclavicular joint and in the process of that treatment used two Kerchner (sic) wires.
3. David Valentine was seen post-operatively on several occasions by Dr. John Thomas, and on January 4, 1978, two portions of wire were removed from the shoulder of the plaintiff.
4. Plaintiff was last medically treated by Dr. John Thomas on January 20, 1978.
5. On March 9, 1981, the plaintiff was examined by Dr. Allen Farries, and an x-ray showed a small fragment of the Kershner (sic) wire or pin remaining in his shoulder on that date.
6. David Valentine was next seen on March 23, 1981, by Dr. Farries, and surgery was scheduled to remove the portion of the pin.
7. On March 30, 1981, a portion of the pin was surgically removed.
8. The date of discovery of the portion of the pin remaining in his shoulder was March 9, 1981.
9. A proposed complaint was filed with the Commissioner of Insurance one or two days prior to February 25, 1982.[1]
10. Suit was filed in the 19th Judicial District Court on March 22, 1982.
The only issue on appeal is whether LSA-R.S. 9:5628 is constitutional. LSA-R.S. 9:5628 provides as follows:
"A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts." (emphasis by the court)
Plaintiff did not discover the alleged act of malpractice until after the three year peremptory period provided in LSA-R.S. 9:5628 had passed; therefore, he was precluded from bringing an action for damages. He contends that LSA-R.S. 9:5628 violates La. Const. art. 1, Sec. 2[2]; La. Const. art. 1, Sec. 3[3], and La. Const. art. 1, Sec. 22[4] because it does not allow plaintiff *292 a reasonable opportunity to assert a claim. Plaintiff especially urges this court to consider the case of Mills v. Habluetzel, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) which held a Texas statute unconstitutional because the statute did not provide a sufficient period of time for a petitioner to assert a claim.

EQUAL PROTECTION
Plaintiff contends that LSA-R.S. 9:5628 violates the Equal Protection Clause of the Louisiana Constitution. Equal protection of the laws mean that state laws must affect alike all persons similarly situated. However, the legislature has wide discretion in enacting laws which affect some group of persons and interests differently from others. Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381 (La. 1978); Succession of Robins, 349 So.2d 276 (La.1977).
In this case, we are dealing with a particular group of individuals, viz., victims of malpractice. Victims who discover their injuries within three years of the alleged act, omission or neglect may file suit for damages (if suit is otherwise brought timely);[5] victims who discover their injuries three years after the act, omission, or neglect are forever barred from filing suit.
Equal protection requires that if the law violates a "fundamental interest" or is based upon a trait which renders the classification "suspect", there must be a compelling governmental interest to justify the difference in treatment by law. In cases where there is no fundamental right involved and no suspect classification, the issue is whether the law which discriminates is supported by a rational basis reasonably related to the governmental interest sought to be advanced by it. Everett v. Goldman, 359 So.2d 1256 (La.1978).
We initially find that the statute does not affect a fundamental right or create a suspect classification.[6] Therefore, the question is whether the discriminatory treatment in the statute is supported by a rational basis reasonably related to the governmental interest sought to be advanced.
This statute is one of several passed in response to sharp increases in medical malpractice insurance rates and the resulting threat of reduced health care to the patient and of greatly increased medical costs to the public. Limitations on the time within which an injured patient may bring a malpractice action will serve to restrict the number of suits brought. The interest sought to be advanced is the alleviation of the insurance crisis by reducing medical malpractice claims, thereby reducing medical malpractice insurance rates, resulting in health care being more accessible to patients at reasonable costs. We find that the classification is rationally related to the state objective sought to be achieved.
Plaintiff particularly relies on the Mills case, supra. That case involved the constitutionality of a Texas statute which provided that a paternity suit to identify the natural father of an illegitimate child for purposes of obtaining support must be brought before the child is one year old, or the suit is barred. The Supreme Court found that the statute did not provide a time period sufficiently long in duration to present a reasonable opportunity for those with an interest in illegitimate children to assert claims on behalf of the children and that the time limitation placed on that opportunity was not substantially related to the state's interest in avoiding litigation of *293 stale or fraudulent claims. Plaintiff's reliance on the Mills case is misplaced.
The standard used in the Mills case to test the constitutionality of the statute involved was whether the statute was substantially related to the state's interest in avoiding the prosecution of stale or fraudulent claims. This is the proper standard to be used to determine whether a statute relating to illegitimates violates guarantees of equal protection, Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), and is higher than the standard for analysis used in cases such as the instant case, viz., that the law which discriminates must be supported by a rational basis reasonably related to the governmental interest sought to be advanced. The Court in Mills could conceive of no essential evidence that invariably would be lost in one year; nor could it find that the passage of a year would appreciably increase the likelihood of fraudulent claims. Thus, the substantial relationship was lacking.
In the instant case, under the standard enunciated above, we have found that LSA-R.S. 9:5628 bears a rational relationship to the state's interest in reducing the costs of health care to the public. The gist of plaintiff's argument seems to be that three years is not long enough for acts of malpractice to be discovered. We disagree. The Louisiana statute provides a time period sufficiently long to allow for a great majority of these types of claims to be filed.
Louisiana courts have long recognized that it is particularly within the scope of the legislature to establish time periods affecting the imposition of liability for past acts. Burmaster v. Gravity Drainage Dist. No. 2, supra. The court in Burmaster found that LSA-R.S. 9:2772, which bars all actions for damages against "any person performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of an improvement to immovable property; (1) More than ten years after the date of the registry in the mortgage office of acceptance of the work by owner; ..." passed constitutional muster.
Similarly, in Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (La.1971), the court upheld a two year peremptory period for a claim for workmen's compensation benefits in LSA-R.S. 23:1209 of the Louisiana Workmen's Compensation Act. In Ancor, the injury was discovered, as in the instant case, after the peremptory period had expired.
Accordingly, we find that LSA-R.S. 9:5628 does not offend the Equal Protection Clause of the Louisiana Constitution.

DUE PROCESS
A statute violates notions of substantive due process when it does not bear a real and substantial relationship to an appropriate governmental objective. Everett v. Goldman, supra. The test is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole. We find that the statute does not violate substantive due process for basically the same reasons we find that it does not violate guarantees of equal protection.
Conceivably, in a small number of cases injuries for medical malpractice may not manifest themselves for many years after the malpractice occurs. To allow an indefinite time for claims to be brought is to allow for an increase in the number of claims brought with the resultant increase in insurance rates and increase in medical costs to the public. A time limit on liability must be established at some point. We are of the opinion that three years is a reasonable length of time for acts of malpractice to be discovered and suits to be instituted therefor.
The objective of the legislature was obviously to decrease health care costs to the public and thereby make health care more readily available. This is a legitimate goal for a state lawmaking body to attempt to attain. We therefore find that LSA-R.S. 9:5628 bears a real and substantial relationship to the public welfare because its enactment will help further increased *294 health care at reasonable rates for Louisiana citizens.[7]
Also, it is peculiarly in the realm of the legislature to regulate causes of action, including replacement and even abolition of causes of action, that one person may have against another for personal injuries. Burmaster v. Gravity Drainage Dist. No. 2, supra.

ACCESS TO THE COURTS
Plaintiff's last argument is that the statute infringes upon his right of access to the courts. The right of access to the courts protects fundamental interests to a greater extent than those interests not considered to be of fundamental constitutional importance. See Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Everett v. Goldman, supra. When a claimant is not asserting a right subject to special constitutional protection, access may be limited or regulated if there is a rational basis for the limitation and regulation. See Everett v. Goldman, supra and cases cited therein.
We have already held that the right urged by plaintiff is not a fundamental right. We have also found that there is a rational basis for the statute. Therefore, the statute does not unconstitutionally deny plaintiff access to the courts.
For the above reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] This claim was filed under the erroneous belief that Dr. John A. Thomas was a qualified health care provider under LSA-R.S. 40:1299.41 et seq. at the time of the alleged negligent act. Dr. Thomas was certified as an enrollee under the medical malpractice statute only as of April 5, 1978.
[2] La. Const. art. 1, Sec. 2 provides as follows:

"No person shall be deprived of life, liberty, or property, except by due process of law."
[3] La. Const. art. 1, Sec. 3 provides as follows:

"No persons shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
[4] La. Const. art. 1, Sec. 22 provides as follows:

"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."
[5] Suit must be brought within one year of discovery of the alleged act of malpractice, but in any event, within three years from the date of the alleged act of malpractice.
[6] Fundamental rights include rights such as free speech, voting, interstate travel and other fundamental liberties. The Louisiana Supreme Court has ruled that the right to recover the full extent of damages one is owed from a tortfeasor is not a fundamental right. Bazley v. Tortorich, 397 So.2d 475 (La.1981). Suspect classifications are those involving such unalterable traits as race, alienage, and religion. Everett v. Goldman, supra.
[7] We are not unaware that the statute may be unduly harsh in certain circumstances. This view was discussed in 50 Tulane L.Rev. at 674 as follows:

"The danger in legislation of the Louisiana variety is that it is designed to reduce malpractice claims by indiscriminately barring causes of action without regard to their validity. It tends to subvert the policy underlying the discovery rule of fairness to an injured patient who may be unable to distinguish slow-healing residual effects of competent medical care from negligently caused results. The harshness of the Louisiana law may become grotesquely apparent when a child is negligently impaired during birth, but the disability does not manifest itself until he is over 3 years old. Under the new provisions, he is allowed no action for malpractice. By denying similar meritorious suits, the time limits are certain to reduce directly the number of malpractice claims. Although they will work to alleviate the medical insurance crisis, their value must be weighed against the loss in substantive fairness to injured patients. These statutes were enacted in a rush to cure the problems of medical liability insurers and may result in seriously penalizing the innocent malpractice victim while immunizing negligent health-care providers. Modifying the tort system to eliminate much needed remedies in this way is difficult to justify." (footnote omitted)