459 So.2d 560 (1984)
Maggie Mingo BROWN
v.
James W. BROWN.
No. 83 CA 1090.
Court of Appeal of Louisiana, First Circuit.
October 9, 1984.
Rehearing Denied November 21, 1984.
*562 Charles B.W. Palmer, Amite, for plaintiff.
Lewis V. Murray, III, Bogalusa, for defendant.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
The primary issue in this appeal is whether or not the plaintiff is entitled to a partition by licitation of certain immovable property and improvements.
The facts giving rise to this case are as follows. Plaintiff, Maggie Mingo Brown, and defendant, James W. Brown, lived together in secret concubinage from December 31, 1954 until November of 1967. On March 19, 1958 plaintiff purchased lots 68 and 69 of Paddock-Welch Subdivision, City of Bogalusa, for $730.00 in cash, which had been given to her by defendant. The act of sale included an acknowledgment by defendant that the property was acquired with plaintiff's separate and paraphernal funds. In 1962 the parties obtained a loan which was used by defendant to acquire materials and labor to begin construction of a residence on these lots. However, most of the construction was performed by defendant himself over a period of approximately three years. Plaintiff contributed no capital and very little labor toward construction of this residence.
On July 26, 1965 plaintiff and defendant, appearing in the act of sale as husband and wife, acquired lots 65 and 66 of Paddock-Welch Subdivision for a cash price of $700.00. Defendant subsequently commenced construction of a residence on these lots, but it has not been completed. Plaintiff has contributed no capital or labor toward the construction of this partially completed residence.
Plaintiff and defendant separated in November of 1967. Defendant has continued to live in the residence on lots 68 and 69 *563 until the present time. On November 8, 1968 plaintiff transferred an undivided one-half interest in these two lots to defendant for a stated consideration of $350.00 cash. The apparent motive for this sale was plaintiff's need for money at that time.
Plaintiff filed the present suit seeking a partition by licitation of the above described properties. The trial court rendered judgment ordering a partition by licitation of lots 68 and 69, but denying same as to lots 65 and 66. The court also ordered the payment of $9,000.00 to defendant as reimbursement for cost of constructing the residence on lots 68 and 69. The remaining sale proceeds were to be divided equally between plaintiff and defendant. Plaintiff appealed.
Plaintiff argues the trial court erred in finding she owned no interest in lots 65 and 66 and the improvements thereon. Her claim to ownership of one-half of these lots is based upon the act of sale listing her as a co-vendee of this property. The law applicable to situations where a concubine is listed as a co-vendee of immovable property with a paramour was set out by this court in Broadway v. Broadway, 417 So.2d 1272 (La.App. 1st Cir.), writ denied, 422 So.2d 162 (1982), at p. 1276, as follows:
"... if the concubine can furnish strict and conclusive proof that her capital and industry, obtained independent of the concubinage, contributed a full share to the acquisition of the subject property, then equity dictates she be declared a one-half owner." (Emphasis added.)
The Broadway court further held there is a rebuttable presumption any contribution made by the concubine was with funds obtained independent of the concubinage.
This presumption has been rebutted in the present case. Plaintiff admits she did not contribute any of the capital used to acquire the property or the improvements thereon. All payments on the property and its improvements were made by defendant with his own funds. Plaintiff used the small amount of money she occasionally earned doing odd jobs primarily to purchase a few household items and some clothing for defendant's daughter, but nothing more substantial. Additionally, she did not assist in the construction of the partially completed residence on these lots. Accordingly, the trial court correctly found she had not established any ownership interest in lots 65 and 66 or the improvements thereon.[1]
Plaintiff also argues the trial court erred in concluding defendant owned one-half of lots 68 and 69. She maintains the 1968 act of sale purporting to transfer a one-half interest in these lots for $350.00 was a prohibited donation in disguise, since this price was totally out of proportion to the value of the property. See La.Civ.Code art. 2464. She further argues this alleged donation was invalid under Civil Code art. 1497 because it divested her of all her property without reserving enough for her subsistence.
In order to determine whether or not the conveyance was a donation in disguise (i.e., whether the price was disproportionate to the value of the thing), we must determine precisely what was sold. It is undisputed that plaintiff was the sole owner of lots 68 and 69 at the time of this conveyance. Therefore it unquestionably transferred a one-half interest in the lots to defendant. However since plaintiff, for reasons discussed below, did not own the improvements located on the lots, she could not transfer any interest in them to defendant.
The improvements were built by defendant with his own capital and labor. Plaintiff contributed no capital and performed very little, if any, labor in constructing these improvements.[2] A landowner *564 does not acquire ownership of improvements built by another merely because they are built on his property. See La.Civil Code art. 508 (prior to 1979 amendment);[3]Babin v. Babin, 433 So.2d 225 (La.App. 1st Cir.), rehearing denied (1983). Under the law in existence at the time of the construction of these improvements, a landowner acquired ownership of such improvements only by complying with certain conditions, one of which was reimbursing the builder for the costs of materials and labor. Id. Since plaintiff had not complied with these conditions at the time of the conveyance, she did not own the improvements.[4] Thus, defendant still owned the improvements himself and did not acquire any interest in them through this conveyance.
Viewed in this light, $350.00 does not appear to be a disproportionate price. It was approximately half the original price paid for the lots. While it is probable the lots had appreciated in value, no evidence was introduced to establish this fact. Thus, plaintiff failed to prove the price paid by defendant was so out of proportion to the value of the property as to render the transaction a donation in disguise. Since there was no evidence of any fraud or coercion, we hold the 1968 conveyance was a valid sale to defendant of a one-half interest in lots 68 and 69. Accordingly, the trial court correctly ordered a partition by licitation of these lots.[5]
In the alternative, plaintiff argues the domestic services she performed for defendant and his children (cooking, washing, cleaning, etc.) during the time they lived together were independent of the concubinage and should be considered a "contribution" entitling her to an interest in the property in dispute. We do not agree such domestic services were independent of the concubinage. Plaintiff and defendant lived together as husband and wife for an extended period of time and any domestic services performed by plaintiff were an integral part of this relationship. Since we find these services were interwoven with the concubinage relationship, plaintiff's argument is totally without merit. *565 See Schwegmann v. Schwegmann, 441 So.2d 316 (La.App. 5th Cir.1983), writ denied, 443 So.2d 1122 (La.1984), cert. denied, ___ U.S. ___, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984).[6]
Plaintiff also argues the trial court erred in awarding reimbursement to defendant since any claim for reimbursement had prescribed by the time it was asserted.
The right to reimbursement arises only when the landowner elects to keep the improvements. In the present case this election did not occur until the filing of suit by plaintiff; defendant's claim for reimbursement was made in answer thereto. Therefore, this claim clearly had not prescribed at the time it was asserted.
Lastly, plaintiff contends the law relating to co-ownership of property by a concubine and paramour violates the principles of substantive due process and equal protection. In particular, she complains concubines are held to a stricter standard of proving co-ownership than other co-owners.
The notions of substantive due process are violated whenever the law under attack does not bear a real and substantial relationship to a legitimate governmental objective. Valentine v. Thomas, 433 So.2d 289 (La.App. 1st Cir.), writ denied, 440 So.2d 728 (La.1983). The applicable standard is whether the law is reasonable in relation to the goal sought and whether it is in the interest of the community as a whole. Id.
Equal protection requires state laws to affect alike all similarly situated. Valentine v. Thomas, supra. In cases such as the present one, which involves no suspect classification or impingement upon a fundamental right, the applicable standard is whether the differential treatment has a rational basis which is reasonably related to a legitimate governmental interest. Id.
The State interest involved in the present case is the encouragement of marriage over a state of concubinage. The State has a legitimate interest in promoting this goal so as to preserve the moral standards and values of society as a whole. See Schwegmann v. Schwegmann, supra, at p. 326. We find that the law in question is reasonably related to the advancement of this interest. Accordingly, it violates neither due process nor equal protection principles.
For the above reasons, the judgment of the trial court is affirmed at appellant's costs.[7]
AFFIRMED.

ON APPLICATION FOR REHEARING.
Rehearing DENIED: We adhere to the reasons assigned in our original opinion as regards the contentions raised in the present application. The net result achieved by the trial court judgment with respect to the reimbursement issue was correct, although as noted in our opinion, its reasoning and the manner in which it was styled was theoretically in error. Although *566 defendant's obligation to pay one-half of the reimbursement costs was extinguished by confusion, plaintiff's obligation to pay one-half of these costs remained intact. Accordingly, the trial court should have ordered an equal division of the sale proceeds, after which plaintiff was to pay defendant $4,500 from her portion of the proceeds. Thus, if we amend the judgment to reduce the amount of reimbursement to $4,500, it will also be necessary to order the payment of this amount out of plaintiff's share of the proceeds. Since the trial court ordered the payment of the full amount of reimbursement out of the mass of the proceeds prior to its division, rather than from plaintiff's share of the proceeds, the final result to the parties is exactly the same as if judgment had been rendered as noted above. It would accordingly be a vain act to amend this judgment, since it would not change the final position of the parties.
NOTES
[1] Plaintiff also maintains defendant donated one-half of lots 65 and 66 (plus improvements) and the improvements on lots 68 and 69 to her. This argument is clearly without merit. A donation of immovables must be by written act passed before a notary and two witnesses. La. Civ. Code art. 1536. Defendant never executed such an act.
[2] Plaintiff argues she contributed to the acquisition of lots 68 and 69 and its improvements by co-signing two loan notes. These loans were used to acquire the lots and materials for the improvements. However, we do not find this sufficient to constitute a contribution of "capital or industry" since defendant made all the payments on these notes.
[3] All subsequent references to La.Civ.Code art. 508 are to this provision as it existed prior to its amendment by Act 180 of 1979. Prior to this amendment, art. 508 provided, in pertinent part, as follows:

"When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.
"If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case require it, for the prejudice which the owner of the soil may have sustained.
"If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby."
[4] The present case is distinguishable from those in which a sale of land and the improvements thereon is deemed to be an election by a landowner to keep (and then sell) improvements built on his land by another. Cf. Blocker v. Mizell, 202 So.2d 357 (La.App. 1st Cir.), writ refused, 251 La. 230, 203 So.2d 559 (1967); Benoit v. Acadia Fuel & Oil Distributors, Inc., 315 So.2d 842 (La.App. 3d Cir.), writ refused, 320 So.2d 550 (1975). In such cases the vendees may be innocent third parties unaware the landowner may not own the improvements. A contrary result would mean the vendees are responsible for reimbursing the maker of the improvements for the costs of materials and labor. The situation is completely different in the present case since the vendee and the maker of the improvements is the same person.
[5] Even assuming, arguendo, this conveyance constituted a donation in disguise, it is not clear it would be null as a prohibited donation under La.Civ.Code art. 1497. In order to set aside a donation under this provision, a plaintiff must conclusively prove the donation divested the donor of all his property and the donor failed to reserve enough for his subsistence. See Pardue v. Turnage, 383 So.2d 804 (La.App. 1st Cir. 1980); Ellis v. Benedict, 408 So.2d 987 (La.App. 2d Cir.1981). Plaintiff has not established sufficiently these elements in the present case.
[6] We likewise reject plaintiff's argument defendant has been unjustly enriched by her performance of domestic services. While defendant may have benefited from such services, plaintiff also received benefits from the relationship since defendant provided her with shelter and financial support throughout the years they lived together. This was sufficient remuneration for the domestic services rendered by her.
[7] That portion of the judgment ordering the payment of $9,000.00 to defendant as reimbursement for cost of constructing the residence on lots 68 and 69 is theoretically in error. At the time of the 1968 sale of the one-half interest in lots 68 and 69 appellant did not own the improvements and did not elect to exercise her right to acquire such ownership until this suit was filed. When defendant acquired the one-half interest in the lots in 1968, he also acquired one-half of the article 508 obligation to reimburse. The trial court required appellant to reimburse all ($9,000.00) of the cost of the improvements when she was only legally liable for one-half thereof because that is all she owned at the time of the election. However, it is unnecessary to amend this judgment to reduce the reimbursement to $4,500.00 because the net effect of the trial court judgment is the same. This is so because the trial court ordered the $9,000.00 taken out of the mass prior to an equal division of the remainder.