21 So.3d 186 (2008)
Pamela WARREN, Theresa Rene Warren, and Sarah Warren Jimenez
v.
LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY, Jeffrey A. Lamp, M.D., Robyn B. Germany, M.D., Sandra Moody, NP-C, and Family Health of Louisiana, Inc.
No. 2007-CC-0492.
Supreme Court of Louisiana.
December 2, 2008.
Rehearing Granted February 13, 2009.
Opinion Vacating Original Opinion on Rehearing June 26, 2009.
*187 Kean, Miller, Hawthorne, DÁrmond, McCowan & Jarman, Linda G. Rodrigue, Jennifer Jones Thomas, Baton Rouge, for applicant.
McGlynn, Glisson & Koch, Benjamin Paul Mouton, Baton Rouge, for respondent.
CALOGERO, Chief Justice.
Today we reaffirm our jurisprudence applying La.Code Civ. Proc. art. 1153 to the amendment of a timely filed petition, an amendment that adds a major child's wrongful death action arising from the death of her father, to find that the amendment relates back to the date of filing of the original petition for wrongful death and survival actions by the wife and another major child of the decedent against the defendant health care providers. See Giroir v. South La. Med. Ctr., Div. of Hospitals, 475 So.2d 1040 (La. 1985). Accordingly, for the reasons set forth below, we hold that the amendment adding the wrongful death action of Sarah Warren Jimenez relates back to the timely filing of the original petition filed by Sarah's mother, Pamela Warren, and her sister, Theresa Rene Warren. We further find that Sarah was entitled to the benefit of the interruption of prescription on the survival action such that the amending petition adding her as a plaintiff to that cause of action was timely filed. See Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383 (La.1993). Therefore, the district court correctly denied the defendants' exception of prescription with regard to the amending petition adding Sarah's claims.
This case arises from the death of Terry Warren. He died on October 13, 2000, at Summit Hospital from complications of congestive heart failure and/or an acute myocardial infarction. On September 11, 2001, Pamela Warren, Mr. Warren's widow, and Theresa Warren, one of Mr. Warren's daughters, filed a request for a medical review panel to investigate their medical malpractice complaint against various health care providers, including Mr. Warren's treating physicians. The medical review panel issued its opinion on August 27, 2002. Pamela and Theresa then filed a petition on November 25, 2002, in the district court asserting survival and wrongful death actions under La. Civ.Code arts. 2315.1 and 2315.2. On July 6, 2004, plaintiffs Pamela and Theresa filed a First Supplemental and Amending Petition. This petition added survival and wrongful death causes of action for Sarah Warren Jimenez, the decedent's second daughter.
In response to the amended petition, the defendants filed an exception of prescription, arguing that Sarah's claims are prescribed on their face because she did not file her action within one year of the date of her father's death. The defendants pointed out that Sarah testified in deposition that she was aware of the filing of the *188 medical review complaint as well as the filing of the instant lawsuit by her mother and sister but chose, at that time, not to participate.[1] Under these facts, the defendants argued that Sarah's claims do not relate back to the original claims pursuant to Giroir. In addition, the defendants claimed they were severely prejudiced by the addition of another plaintiff in July 2004, nearly three years after the request for a medical review panel was made in September 2001, and nineteen months after the lawsuit was filed in November 2002.
The plaintiffs opposed the exception. In support, the plaintiffs urged the trial court to apply Tureaud v. Acadiana Nursing Home, 96-1262 (La.App. 3 Cir. 5/7/97), 696 So.2d 15, and Phillips v. Francis, 01-1105 (La.App. 3 Cir. 2/6/02), 817 So.2d 107. According to the plaintiffs, Tureaud and Phillips stand for the proposition that if proper party plaintiffs file their claim timely, that suit will interrupt prescription as to any other plaintiffs that have similar claims.
After a hearing, the district court overruled the defendants' exception of prescription. From this ruling, the defendants sought supervisory review. A fivejudge panel of the court of appeal denied the writ, citing La.Code Civ. Proc. art. 1153 and Giroir. Upon application by the defendants, this court remanded the case to the court of appeal for briefing, argument and opinion. Warren v. Louisiana Medical Mutual Insurance Company, 06-1547 (La.9/29/06), 938 So.2d 693.
On remand, a majority of the five-judge panel of the court of appeal again denied the writ application in an unpublished written decision, relying on the four guidelines identified by this court in Giroir. We again granted the defendants' writ application to consider the propriety of the court of appeal's ruling as well as the application of La.Code Civ. Proc. art. 1153 and Giroir to the facts of this case. Warren v. Louisiana Medical Mutual Insurance Company, 07-0492 (La.4/27/07), 955 So.2d 670.

DISCUSSION
We first turn to the survival action that Sarah seeks to join in as an additional plaintiff. A survival action, which compensates for the damages suffered by the victim from the time of injury to the moment of his death, and a wrongful death action, which compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter, are separate causes of action. See Walls v. American Optical Corp., 98-0455 p. 14, (La.9/8/99), 740 So.2d 1262, 1273; Taylor v. Giddens, 618 So.2d 834, 840 (La.1993). With regard to Sarah's addition as a plaintiff in the survival action, she shares in that cause of action with her sister and mother; therefore, prescription on that cause of action was interrupted when Sarah's sister and mother timely filed suit against the defendants. "`When several parties share a single cause of action ..., suit by one interrupts prescription as to all.'" Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1390 (La.1993), quoting Louviere v. Shell Oil Co., 440 So.2d 93, 96 (La. 1983). "`[A]ll prescriptions affecting that cause of action are interrupted by the suit and remain continuously interrupted as *189 long as the suit is pending.'" Id., quoting Louviere, 440 So.2d at 98. Therefore, Sarah, like her mother and sister, was also entitled to the benefit of interruption of prescription on her survival claim against the defendants. The district court thus properly overruled the defendants' exception of prescription with regard to the amending petition adding Sarah as a plaintiff in the survival action.
We next turn to the issue of Sarah's wrongful death claim and whether the amending petition adding this claim relates back under La.Code Civ. Proc. art. 1153 to the date of the timely filing of her mother's and sister's survival and wrongful death claims. The analysis with regard to this cause of action begins with La.Code Civ. Proc. art. 1153. That article provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of filing the original petition.
In Giroir, this court examined the jurisprudence applying Federal Rule of Civil Procedure 15(c), upon which La.Code Civ. Proc. art. 1153 is based, and concluded that "[a]lthough the [federal] Rule refers to `an amendment changing the party' it has properly been held to sanction relation back of amendments which add or drop parties, as well as those substituting new parties for those earlier joined." 475 So.2d at 1043 (collecting authorities). While acknowledging the "less difficult" legal analysis for the relation back of amendments involving a change of capacity, this court nonetheless set forth factors to consider for the relation back of an amendment adding or changing plaintiffs. Id. at 1044. Relying on our prior case in Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), regarding amended petitions adding or substituting defendants, we set forth these factors in Giroir: "[a]n amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense." Giroir, 475 So.2d at 1044.
In Giroir, the husband of the decedent filed suit against the defendants seeking survival damages as administrator of his wife's estate and wrongful death damages sustained by him. Ten days later, but after the prescriptive period had run, the husband sought to add the decedent's two major children in both the survival and wrongful death actions. The amending petition also sought to change the husband's capacity so that he appeared as an individual rather than as the administrator of his wife's estate. We found that these amending petitions adding the wrongful death claims of the major children related back to the filing of the husband's original petition. With regard to the major children's wrongful death and survival actions, we reasoned in pertinent part that the defendants knew or should have known of the existence and involvement of the children, because (1) the facts in the original petition gave the defendants notice of, and did not negative, the reasonable possibility that a surviving child of a deceased fifty-five year-old married woman would be entitled to recover as a survivor or wrongful death beneficiary and might later assert a claim, and (2) the defendants had received actual notice that the decedent had children through the recorded visits of her family members, the recorded assistance *190 of her daughter in transporting her, and the recorded psychiatric report evidencing her concern for her grandchildren. Additionally, the court reasoned that the defendants had not been prejudiced in preparing and conducting their defense, not only because the added actions arose out of the same transaction or occurrence and because they knew of and had record of the existence of the children, but also because the timing of the amendment was well before trial and the defendants thus had had ample time to prepare for trial. We reasoned that the defendants in Giroir had failed to show that they were in any way hurt or impaired in their ability to investigate, preserve evidence, and prepare defenses on both the liability and quantum issues.
Giroir has since been applied in various situations in the courts of appeal, with some courts finding that the added claims of a new plaintiff did relate back to the filing of the original petition and other courts finding to the contrary. The lower courts have not encountered problems in applying these precepts; consequently, we discern no need to reconsider Giroir today. However, we point out that the enumerated Giroir factors are guidelines to be considered under the totality of the circumstances before an amendment adding a new plaintiff will be deemed to relate back pursuant to La.Code Civ. Proc. art. 1153.
Considering the Giroir factors in this case, we agree with the court of appeal that the amending petition adding Sarah's wrongful death claim satisfied the first guideline, because Sarah's claim arose out of the same conduct, transaction or occurrence set forth in the original petitioni.e., the alleged malpractice by the defendants that allegedly resulted in Mr. Warren's death. Likewise, the amending petition satisfies the third factor, because Sarah is sufficiently related to the original plaintiffs, her mother and sister. Indeed the parties agree that the amended claims of Sarah arise out of the same transaction or occurrence and that Sarah is not a wholly new or unrelated party. Therefore, the dispute in this case, as the court of appeal found, centers on the second and fourth factors identified in Giroir.
The defendants argue to this court that the plaintiffs did not satisfy their burden for relation-back of the amended claim under the Giroir criteria.[2] With regard to the second prong, they assert they had no actual knowledge of the existence of Sarah because she was not named in the medical review panel complaint. The only suggestion that Mr. Warren had other children was in the petition, which indicated that the initial plaintiff, Theresa Warren, was "one of the surviving children." [emphasis added]. The defendants maintain Sarah was not by name identified as a daughter of the decedent until she was listed as a witness in the plaintiffs' answers to interrogatories on March 5, 2003. Relying on Musgrove v. Glenwood Regional Medical Center, 37-575 (La.App. 2 Cir. 9/26/03), 855 So.2d 984, the defendants claim they were not provided with enough information to reasonably establish that Sarah would in fact file a claim over three and a half years after the date of the alleged malpractice. In addition, the defendants point out, Theresa testified in June 2004 that Sarah *191 was aware of the litigation but had no interest in pursuing a claim; thus, merely identifying Sarah as a witness, the defendants argue, did not give them adequate notice of her claim.
Moreover, the defendants argue that the court of appeal's position that the defendants' knowledge of the mere "possibility" of Sarah's claim, conflicts with a prior decision of the First Circuit in Duffie v. Southern Pacific Transportation Company, 563 So.2d 933 (La.App. 1st Cir.1990). In Duffie, the First Circuit concluded that it did "not believe that defendant must remain alert indefinitely to the possibility that a plaintiff might have a spouse or children, or both, who might at some future date bring a claim."
The defendants also assert that Sarah's claim is a separate cause of action from the claims asserted by her mother and sister. The defendants point out that Sarah's loss of consortium claims are distinguishable from those of her mother and sister in that she was a major at the time of her father's death and estranged from her family. The defendants note that there are significant factual differences between the two daughters' relationships with their father, resulting in two potentially different loss of consortium claims. Although Sarah and Theresa are sisters and belong to the same category of plaintiffs, their wrongful death claims are not identical but distinct and separate, the defendants maintain.
Finally, the defendants argue that they are prejudiced by Sarah's late arrival to the litigation. They point out that the plaintiffs did not address or justify the extensive time delay between the filing of the medical review panel complaint, the original petition, and the amended petition, in their opposition to this exception. The defendants assert almost four years have passed since the alleged malpractice and three years since the medical review complaint was filed. In addition, they point out that Sarah made an intentional decision not to file her petition during this "lengthy" period of time.
Relying on Giroir and La.Code Civ. Pro. art. 1153, the plaintiffs maintain that Sarah's claim relates back to the timely filed original claims. The plaintiffs argue that the second Giroir factor was satisfied, because the defendants knew of Sarah's existence and involvement in the case, and thus they knew or should have known that she might file a claim. In support, the plaintiffs note that Sarah's name was listed as the informant on the death certificate and that the original petition was specifically crafted to note that Theresa was "one" of the decedent's surviving adult children, the clear implication being that there were potentially more similarly-situated plaintiffs. This notice, the plaintiffs argue, allowed the defendants an opportunity to prepare a defense to the possible claim.
As to the fourth factor, the plaintiffs argue that Sarah's wrongful death claim is identical to her mother's and sister's claims, and therefore, the defendants suffer no prejudice with the addition of Sarah's claims. The plaintiffs contend the passage of time between the filing of the original claims and the addition of Sarah's claim causes no prejudice to the defendants.
With regard to the second factor, we believe the "existence and involvement" of Sarah and her additional cause of action were sufficiently known or knowable to the defendants within the prescriptive period. The defendants were aware of the existence of Sarah Warren because she was named as the informant on the death certificate, and her address was provided thereon, and thus the defendants knew or should have known that she was a daughter *192 of the decedent.[3] Additionally, the petition clearly states that Theresa was but "one" of the decedent's children; thus, the defendants were placed on notice that there existed other similarly-situated potential plaintiffs. As the court of appeal reasoned, although Sarah was not mentioned by name in the request for a medical review panel or in the petition for damages, paragraph five of the petition stated that Theresa was "one of the surviving children of Terry Warren") and, in that capacity, she was asserting both survival and wrongful death claims. Thus, the petition gave the defendants notice of, and did not negative, the reasonable possibility that another surviving child of Mr. Warren would be entitled to recover under La. Civ.Code arts. 2315.1 and 2315.2 and that she might later assert such claims. See Giroir, 475 So.2d at 1045. This information was certainly known or knowable by the defendants before the prescriptive period had run. And this information was confirmed when, in answers to interrogatories mailed to the defendants on March 5, 2003, approximately three and one-half months after the petition for damages was filed, Sarah was specifically identified as Terry Warren's daughter and a potential witness in the case. Thus, the defendants have known of Sarah's existence and involvement in the case, as an adult child of the decedent and a witness in the case, since the death of her father, and certainly since shortly after the filing of the original petition.
The defendants, and the dissenters in the court of appeal, make much of the fact that Sarah knew of the litigation but had chosen not to participate, and that it was only when she knew that she would be a witness in the case that she joined as a plaintiff asserting a share in the survival damages and her own wrongful death damages. Certainly, were we to consider the fact that Sarah knew of the litigation but did not want to get involved, Sarah would seem, at first glance, to not present a sympathetic portrait with regard to the prescription issue. Indeed, at least one state requires the plaintiffs to show that the delay in adding the party was not due to inexcusable neglect. See Stansfied v. Douglas County, 146 Wash.2d 116, 43 P.3d 498 (2002); Beal for Marinez v. City of Seattle, 134 Wash.2d 769, 954 P.2d 237 (1998). However, the Louisiana statute speaks only of adding a cause of action or defense, which has been interpreted to include the addition of a plaintiff or defendant, and the subjective intent of the added party in asserting his or her claim has not been cited as a consideration for finding or not finding a relation back to the original petition. Instead, the statute and jurisprudence focus on whether the defendant knew or should have known of the involvement of the added plaintiff, and we conclude that the defendants in this case reasonably had such knowledge. Moreover, the deposition testimony of Sarah and her sister Theresa reveals that the death of their father had put the family into emotional turmoil, thereby explaining Sarah's reluctance to become involved in the litigation.
In addition to not adding a subjective element to the analysis, we also decline to read into the phrase "existence and involvement" a heightened degree of probability *193 of asserting a claim in the future. The defendants would have us add as additional consideration whether there was a reasonable probability, or a certainty, that the identified plaintiff would in fact assert her claim. However, we distinguish Musgrove v. Glenwood Regional Medical Center, 37,575 (La.App. 2 Cir. 9/26/03), 855 So.2d 984, on its facts. That case involved a claim by an emergency room physician who filed suit against a hospital for damages sustained as a result of wrongful termination. Three years later, his wife, who was employed by the hospital as a respiratory therapist, filed a claim for loss of consortium. In finding the wife's claim did not relate back, the court of appeal explained that "[e]ven if the defendants have actual knowledge of other persons involved in the tort, there is no relation back unless the original petition gives reasonable notice that these persons will have a claim." In the instant case, the added claims for Sarah are survival and wrongful death damages in a medical malpractice suit filed by her mother and her sister, the widow of the decedent and one of his children. Such claims from a surviving child would normally be expected and are much less attenuated then a claim for loss of consortium damages from a wife in a wrongful employment termination suit, which would not be as predictable. In other words, that a surviving child might eventually assert survival and wrongful death actions along with those asserted originally by her mother and sister is much more likely than a wife eventually seeking loss of consortium damages in a wrongful employment termination suit.
This brings us to the fourth factor, whether the defendants would be prejudiced in preparing and conducting their defense if Sarah is allowed to assert her wrongful death claim at this time. With regard to the survival action asserted by Sarah, the defendants cannot, and essentially do not, claim they would be prejudiced by preparing or conducting their defense as to this claim. Thus, the issue of prejudice to the defendants, as the court of appeal observed, relates solely to Sarah's wrongful death action. Notwithstanding that, from a prejudice standpoint, the passage of time between the filing of the original petition and the amending petition logically weighs in general against the relating back of the amendment, we agree with the lower court that there has been no showing of prejudice in this case. Sarah's claim for wrongful death is in large part the same as the original plaintiffs, her mother and sister, that is, she must still prove that the defendants committed malpractice, that such malpractice caused her father's death, and that those actions caused her damages. Thus, the evidence necessary to defend against Sarah's claim of malpractice is the same evidence necessary to defend against the claim of the original plaintiffs.
While Sarah's quantum damages will surely be different from those of her mother and sister, the defendants have not shown with any particularity how the delay in this case actually prejudices them in preserving evidence and preparing for trial on the amended wrongful death claim with respect to quantum. Unlike in Giroir, a post-trial case, this case has not yet proceeded to trial, and the defendants have made only general allegations of prejudice to preparation of their defense. The deposition testimony of Sarah and her sister Theresa sets forth at length, and quite explicitly, the nature, good and bad, of Sarah's relationship with her family and her father. There is no reasonable indication from the record of the hearing on the exception of prescription that the defendants have been prevented or impaired in any way from discovering evidence regarding Sarah's relationship with her father *194 and how his death affected her. Additionally, the fact that a wrongful death claim for Sarah might necessarily increase any quantum liability for the defendants, and thereby in a sense cause "prejudice" to the defendants, was an issue laid to rest in Giroir, wherein the wrongful death claims of the two adult children were allowed to relate back to the filing of their father's petition for damages. Accordingly, we conclude that the fourth Giroir factor was also satisfied in that the defendants would not be prejudiced in preparing and conducting their defense by the relation back of the amended petition adding Sarah's wrongful death claim.

CONCLUSION
We find that Sarah was entitled to the interruption of prescription on the survival action and that the amending petition adding her as a plaintiff to that cause of action was timely; thus, the district court properly overruled the defendant's exception of prescription with regard to Sarah's survival claim. Further, we have considered the Giroir factors under the totality of the circumstances of this case, and, based on our examination, we find that the amended wrongful death claim arises out of the same conduct, transaction or occurrence set forth in the original pleading, the defendants either knew or should have known of the existence and involvement of Sarah, who is not a wholly new or unrelated party, and the defendants will not be prejudiced in preparing and conducting their defense to Sarah's claim. We conclude the district court properly permitted the amended petition adding Sarah's wrongful death claim to relate back to the original timely-filed petition under La. Code Civ. Proc. art. 1153. Accordingly, the decision of the court of appeal is affirmed.
AFFIRMED AND REMANDED.
KIMBALL and WEIMER, JJ., additionally concur and assign reasons.
VICTORY, TRAYLOR and KNOLL, JJ., dissent and assign reasons.
KIMBALL, J. concurring.
I concur in the majority's conclusion that Sarah's claim should relate back to the timely-filed Petition for Damages filed by her mother and sister. I write separately to address the concerns regarding the necessity of a "pleading mistake" or "pleading error" raised by the various dissents. Neither the plain language of La. C.C.P. art. 1153 nor the Giroir decision suggest that a pleading mistake is required for an amendment that adds a plaintiff to relate back. Giroir v. S. La. Med. Center, 475 So.2d 1040 (La.1985).
At the time of the enactment of Article 1153, Federal Rule of Civil Procedure 15(c), upon which Article 1153 is based, Giroir, 475 So.2d at 1042, provided as follows:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
F.R.C.P. 15(c) (1959). Similarly, the text of Article 1153 provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
La. C.C.P. art. 1153 (2008). As evidenced by the text of the two provisions, the language of Article 1153 and F.R.C.P. 15(c) (1959) is substantially identical. Notably, *195 neither makes any mention of a pleading mistake. In 1966, F.R.C.P. 15(c) was amended to add the following sentence after the above language:
An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merit s, and (2) knew or should have known that, but for a mistake concerning the identify of the proper party, the action would have been brought against him.
F.R.C.P. 15(c) (1966) (emphasis added).[1] The amendment notes to the 1966 amendment state that F.R.C.P. 15(c) was "amplified to state more clearly" that an amendment adding or substituting parties would relate back. F.R.C.P. 15(c), Advisory Committee Notes, 1966 Amendment. This language suggests that the original version of F.R.C.P. 15(c) (1959), upon which Article 1153 is based and to which Article 1153 is substantially identical, allowed the addition or substitution of parties, even though, like Article 1153, it did not expressly state that it did. This language alone appears sufficient to allow the relation back of an amendment adding a plaintiff. This conclusion is bolstered by the inclusion of the phrase "against whom a claim is asserted" in the second sentence of F.R.C.P. 15(c). This sentence specifically applies to defendants only, and, in so doing, requires that there be notice and a mistake concerning the identity of the proper party, in addition to satisfaction of the "foregoing provision." In my view, the addition or substitution of defendants is governed by both the first sentence (the "foregoing provision is satisfied") and the second sentence (referring to parties "against whom a claim is asserted" only).[2] However, courts analyze the addition of a defendant differently from the addition of a claim or plaintiff. The plain language of F.R.C.P. 15(c) (1966) suggests that this is the case, and a review of federal jurisprudence shows that a pleading mistake is not required for the addition or substitution of plaintiffs. See, e.g., American Banker's Ins. Co. of Florida v. Colorado Flying Academy, 93 F.R.D. 135 (D.Colo.1982) (allowing relation back of amendment adding plaintiff where there was no pleading error); Neufeld v. Neufeld, 910 F.Supp. 977 (S.D.N.Y.1996) (same); Andujar v. Rogowski, 113 F.R.D. 151 (S.D.N.Y.1986) (same); Stoppelman v. Owens, 580 F.Supp. 944 (D.C.D.C.1983) ("addition of parties after the statute of *196 limitations has run is not significant when the amendment in `no way alters the known facts and issues on which the action is based'"). Therefore, because Article 1153 is substantially identical to the original version of F.R.C.P. 15(c) (1966), and makes no mention of a pleading mistake requirement, a pleading mistake is not required for the addition or substitution of a plaintiff.
The Giroir decision, the validity of which is not questioned in this case, supports this conclusion. The Ray and Giroir courts applied the same version of F.R.C.P. 15(c) as was in force in 1966, as cited above. See F.R.C.P. 15(c) (1966); F.R.C.P. 15(c) (1983); F.R.C.P. 15(c) (1985). The Ray decision, regarding adding or substituting defendants, specifically requires a mistake concerning the identity of the proper party defendant for an amendment to relate back. Ray, 434 So.2d at 1086.[3] The Giroir decision, on the other hand, specifically does not require a pleading mistake for the relation back of an amendment adding or substituting a plaintiff. Giroir, 475 So.2d at 1044.[4] Moreover, the Giroir court, looking to the same language as the Ray court, held that "[e]ssentially the same criteria established by Ray v. Alexandria Mall should be applied to determine whether an amended petition adding a plaintiff relates back." Giroir, 475 So.2d at 1044. The factors are similar or "essentially the same," but they are not identical. While the Giroir court modeled its factors for adding or substituting a plaintiff on those promulgated by the Ray court for adding or substituting a defendant, it chose not to duplicate them exactly. Specifically, the Ray pleading mistake requirement was omitted in the Giroir factors for adding or substituting a plaintiff.
For the foregoing reasons, it is my view that a pleading mistake is not required for an amendment adding or substituting a plaintiff to relate back to a timely pleading.
WEIMER, J., concurring in the result.
I write separately to point out that this case is distinguishable from the recent decision of this court in Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42, on reh'g, (7/1/08), 989 So.2d at 53-81. Factually, Borel presented the converse of the situation presented here. It involved an attempt to add a new and unrelated defendant who had not previously been sued to a pending medical malpractice suit. In this case, the defendants were all sued *197 timely, consistent with the requirements of the Medical Malpractice Act, LSA-R.S. 40:1299.41, et seq. The issue presented here is not whether, as in Borel, a new defendant, not timely sued, can be brought into this proceeding, but whether the timely filed suit against the defendants can be amended to add the survival and wrongful death claims of a plaintiff who is the daughter and sister of the original plaintiffs. The addition of related claims asserted by related plaintiffs to pending litigation is governed by LSA-C.C.P. art. 1153. Unlike the situation in Borel, where we were concerned with the interplay between the general articles on interruption of prescription found in the Louisiana Civil Code and the specific provisions of the Medical Malpractice Act with respect to suspension of prescription (which provisions, we noted, exist as an equalizer to litigants in situations where interruption of prescription is not available), the Medical Malpractice Act is silent with respect to the issue of relation back of pleadings. As acknowledged by this court in Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, 579, where there is no conflict between the general codal articles and the specific provisions of the Medical Malpractice Act, the various provisions should be read in conformity with each other. Thus, because the Medical Malpractice Act is silent as to the relation back of pleadings adding an additional claim and/or plaintiff, there is no bar to applying LSA-C.C.P. art. 1153 in this case.
Application of LSA-C.C.P. art. 1153 does not operate here simply to "get around medical malpractice prescription." The purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely, and to protect from stale claims and from the loss resulting from non-preservation of relevant proof. Giroir v. South Louisiana Medical Center, Division of Hospitals, 475 So.2d 1040, 1045 (La.1985). Not one of those goals is undermined by the result in the present case. In fact, amendment of the pleadings to include the survival claim of a major child of the decedent does not alter the defendants' liability whatsoever. The addition of the survival claim effects only the division between the plaintiffs of the proceeds of any judgment that might be rendered on liability. It does not affect defendants' notice of the existence of the claim or their proof. As to the wrongful death claim, a weighing of the Giroir factors reveals that the defendants knew or should have known of the existence of the claim within the prescriptive period, and that they will hardly be prejudiced in the preparation or conduct of their defense with regard to this claim, as the only additional evidence they will require will be that relating to the relationship between the plaintiff and decedent, which they have ample opportunity to discover.
VICTORY, J., dissenting.
I dissent from the majority opinion's application of Girior v. South La. Medical Center, 475 So.2d 1040 (La.1985) to hold that an amended petition adding a new plaintiff nearly four years after that plaintiff's cause of action arose has not prescribed. La. C.C.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." This Court has greatly expanded this codal provision to allow the relation back of not only new actions or defenses as allowed by La. C.C.P. art. 1153, but also new plaintiffs and defendants. Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983) (new defendants) and Girior, supra (new plaintiffs). Not only is that contrary to *198 the express provisions of La. C.C.P. art. 1153, but as can be seen from the result in this case, the effect of applying La. C.C.P. 1153 to allow the addition of a new plaintiff amounts to a total end-run around prescription.
Although Girior purportedly relied on Ray, which enunciated four factors for adding a substitute defendant, Girior actually went beyond the holding in Ray. Ray involved a timely filed suit against "Alexandria Mall" when the correct defendant was actually "Alexandria Mall, Ltd." Thus Ray addressed only "substituting" a defendant and required that the "purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him. (Emphasis added)." Further, Ray explained that La. C.C.P. Art. 1153 was based on Fed. R.C. P. 15(C), which only allows amendment adding a defendant if the added defendant knew or should have known that but for a pleading mistake concerning the identity of the proper party, the action would have been brought against him. Girior does not explicitly list a pleading mistake in its factors, but it did justify its holding by stating that "no essential protective purpose of the prescription statute [was] violated" by amendment in that case because prescriptive statutes are "designed to protect him against lack of notification of a formal claim within the prescriptive period, not against pleading mistakes that his opponent makes in filing the formal claim within the period." 475 So.2d at 1045 (citing Allstate Ins. Co. v. Theriot, 376 So.2d 950, 954 (La.1979), rehearing denied 1979; Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973); Tate, Amendment of Pleadings in Louisiana, 43 Tul. L.Rev. 211, 233 (1969); F. James, Civil Procedure Sec. 5.9 (1965); Comment, Developments in the Law: Statutes of Limitations, 63 Harv. L.Rev. 1177, 1185 (1950)). In my view, it is apparent that a pleading mistake is required in order to apply La. C.C.P. art. 1153, especially when so much emphasis has been placed on Ray and F.R.C.P. 15, which clearly only allow an amendment to correct a pleading mistake. Furthermore, F.R.C.P. 15 only allows an amendment to relate back to the original pleading in certain circumstances when "the amendment changes the party or the naming of the party against whom a claim is asserted," it never provides for an amended pleading to relate back which adds a plaintiff. F.R.C.P. 15(C). It should also be noted that Girior has been the subject of much dispute by the court of appeals. See Maraist and Galligan, Louisiana Tort Law, § 10.04[11].
Further, even if Girior could be interpreted not to require a pleading mistake, in my view, two of the four criteria in Girior were not met in this case, i.e., whether the defendant knew of the added plaintiff's "involvement" and whether the defendant would not be prejudiced in preparing and conducting his defense.
Finally, it must be remembered that "relation back" is really just another way of getting around prescription, in the same way that interruption and suspension are, thus La. C.C.P. art. 1153 should not be considered in a vacuum. That issue was recognized in Ray, which held in the fourth factor that the amendment must not add a wholly new and unrelated defendant, "since this would be tantamount to asserting a new cause of action which would have been otherwise prescribed." I question whether a "relation back" rule found in the Code of Civil Procedure can operate to get around medical malpractice prescription in this way. Further, if this were a newly added defendant, Ray would not allow it because it did not result from a pleading mistake. In addition, as to newly added *199 defendants, the Court in Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La. 1986) held that "Art. 1153 does not authorize the relation back of an amendment which merely adds a new defendant." 486 So.2d at 718. In my view, La. C.C.P. art. 1153 was not intended to allow relation back to eliminate any prescription issues. For what would be the point of the medical malpractice prescriptive statute, La. R.S. 9:5628, if new plaintiffs could file new causes of action outside the time periods provided in La. R.S. 9:5628 by simply having their new claim related back to the timely filed claim under La. C.C.P. art. 1153?
Finally, this Court just held in Borel v. Young, 07-419 (La.7/1/08), 989 So.2d 42 (on rehearing), that "medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription, to the exclusion of the general codal articles on interruption of prescription." Thus, the majority's holding as to the survival action, that the general interruption of prescription rule that "[w]hen several parties share a single cause of action ..., suit by one interrupts prescription as to all" is clearly in violation of our express holding in Borel. Not only that, the majority's holding is based on Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383 (La. 1993), which held that a tortfeasor and employer were solidarity liable such that interruption of prescription against one was effective against the other under La. C.C. art. 1799. Williams is not only inapplicable here, it is based on a general codal article on interruption of prescription, which we just held in Borel did not apply to medical malpractice claims. Lastly, for the same reasons we held in Borel that the general rules regarding interruption of prescription do not apply in medical malpractice cases, this general rule allowing relation back of pleadings to interrupt prescription, La. C.C.P. art. 1153, does not logically apply either.
For the reasons stated above, I respectfully dissent.
TRAYLOR, Justice, dissenting.
The majority opinion determines that the amendment of the instant petition relates back to the date upon which the original petition was filed, notwithstanding the fact that the amendment sought to add another plaintiff to the wrongful death/survival actions approximately nineteen months after the original filing. In reaching its conclusion, the majority refers to the "relation back" provisions of LA.CODE CIV. PROC. art. 1153, as well as referring to this Court's previous analysis of "relation back" principles in Giroir v. South Louisiana Medical Center, Division of Hospitals, 475 So.2d 1040 (La.1985). While the aforementioned legislation and jurisprudence may be interpreted in such a way as to effectuate the outcome ultimately reached by the majority, I disagree with the majority's interpretation given the facts of the case at hand. Furthermore, I respectfully suggest that we need to look more closely at the original purpose behind the law pertaining to the relation back of amendments.
The procedural article pertaining to the relation back of amendments is LA.CODE CIV. PROC. art. 1153, which provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.[1]
*200 Moreover, the Giroir Court analyzed the "relation back" principles and found:
Essentially the same criteria established by Ray v. Alexandria Mall should be applied to determine whether an amended petition adding a plaintiff relates back. While Rule 15(c) as phrased deals only with changing defendants, the Advisory Committee's Note of 1966 points out that its approach is also relevant to amendments substituting or adding plaintiffs: "... [T]he attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." The federal courts have held that it is clear that the considerations established in the rule were intended to apply to an amendment which substitutes or adds a plaintiff. Accordingly, an amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.[2]
At first blush, it appears as if the addition of Sarah Warren Jimenez ("Jimenez") would relate back to the original filing of the instant petition, as it can be argued that the aforementioned Giroir factors are met. However, I believe that the Giroir Court failed to explicitly address the implicit notion underlying the laws which provide for relation back of amendments.
Because we derived our procedural article from the federal rules, it is important to look at the origins of the federal "relation back" principles. The "relation back" principles developed as a way to ease the effects of statutes of limitation when mistakes had been made in the form of pleading, and the "relation back" laws were very narrowly tailored. Gradually, the law expanded to allow for the addition/change of defendants and plaintiffs; however, the underlying current of the law has remained the same. "Relation back" principles were designed to preserve one's opportunity to present a case, and have the case decided on its merit s, as opposed to having the case dismissed on a technicality.
In the instant matter, there was no technical error of pleading, nor was a plaintiff "inadvertently" left out of the pending litigation. In this case, Jimenez was fully aware of the wrongful death/survival actions, yet she made a conscious decision to *201 stay out of the litigationuntil she changed her mind. "Relation back" principles should not be used to give an unfair advantage to a party who knowingly remains out of litigation, yet then has an opportunity to "wait and see" whether he/ she wants to join in the actionand joins well after the applicable prescriptive periods have run.
Finally, I agree with Justice Victory in his dissent wherein he raises the conflict in the majority opinion here with our recent holding in Borel v. Young, XXXX-XXXX (La.7/1/08), 989 So.2d 42 (on rehearing). On rehearing in Borel, a majority of this court held that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription, and not the general codal articles on the interruption of prescription. Consequently, the majority's application of the general interruption of prescription rules in this case conflicts with the holding in Borel on rehearing.[3]
Accordingly, because the majority opinion incorrectly found the amended petition to relate back to its original date of filing, I respectfully dissent.
KNOLL, Justice, dissenting.
After carefully examining the facts of the present case, I find Jimenez's claim had prescribed. The record clearly demonstrates she made a conscious and informed decision not to join her mother and sibling in the medical malpractice petition for the alleged wrongful death of her father. Four years after the death of her father, when she learned that she would have to become involved in the suit as a witness, she then arbitrarily changed her mind and decided to join the case as a party plaintiff. The majority opinion now allows her to file her claim, defeating prescription through the use of the relation-back doctrine broadening the principles set forth in Giroir v. South La. Medical Center, 475 So.2d 1040 (La.1985).
Under the circumstances of this case, not only is a relation-back analysis inappropriate, but further, the majority opinion today broadens the relation-back principles set forth in Giroir to now include arbitrary factors in allowing a relationback amendment. Heretofore, the criteria of the Giroir jurisprudence was based on the effect of non-prejudicial pleading mistakes. This departure from established jurisprudence is unwarranted in this case. In Giroir, the court explained that the fundamental purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from the loss of non-preservation of relevant proof. Giroir, 475 So.2d at 1045. Prescriptive statutes seek to prevent prejudice to a defendant either by a delay in notification of the claim (the prejudice usually being the deprivation of an opportunity to perform a timely investigation of the claim) or by the loss of documents or witnesses which the defendant would have gathered or preserved if timely notified. Findley v. City of Baton Rouge, 570 So.2d 1168, 1170 (La.1991); Tate, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211 (1969). Prescription statutes are designed to protect defendants against lack of notification of a formal claim within the prescriptive period, not against non-prejudicial pleading mistakes that their opponents make in filing the formal claim within the period. Giroir, 475 So.2d at 1045; Findley, 570 So.2d at 1170; Tate, supra; Allstate Ins. *202 Co. v. Theriot, 376 So.2d 950, 954 (La. 1979); Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973). This well-established rule illustrates the flaw in the present case.
Prescription statutes protect defendants by barring rights not exercised within the prescriptive period. La. Civ.Code art. 3447. This protection is not intended, however, to extend to non-prejudicial pleading mistakes made by their opponents in filing the formal claim within the prescriptive period. Giroir, 475 So.2d at 1045; Findley, 570 So.2d at 1170; Tate, supra; Allstate, 376 So.2d at 954. The relation-back principle announced in Giroir allows a plaintiff to revive his/her claim when that claim would otherwise be barred due to mistake or inadvertence in filing the formal claim within the prescriptive period, when no disadvantage will accrue to the opposing party. What the majority seeks to do in this case is to allow the revival of a knowingly renounced claim to the disadvantage of the opposing party. There is no mistake or inadvertence alleged in this case. Jimenez consciously decided not to participate in her family's claim during the prescriptive period and then, arbitrarily changed her mind.
The majority opinion sets forth an arbitrary precedence by giving more prescriptive rights to one who changes his/her mind about filing suit. One who chooses not to timely file suit and lets his/her cause of action prescribe cannot somehow preserve his/her cause of action under the relation-back doctrine announced in Giroir. The fact that the plaintiff's family filed timely does not give her a greater prescriptive right than others whose causes of action would be untimely.
The majority eviscerates the essential protective purpose of prescription by permitting the relation-back of the post-prescription amendment to the prejudice of the defendants. Although the record does demonstrate that the defendants had adequate notice of Jimenez's identity, the record also indicates that had the defendants sought out Jimenez and inquired whether she would be involved in the litigation for the first three-and-one-half years of these proceedings her answer would have been unequivocally, "No." The defendants reasonably relied on her stated intention not to file a claim, and now, more than four years after the death of her father, are prejudiced in preparing their defense and timely investigation of her claim.
The majority's opinion allows a plaintiff, who made a conscious decision not to file timely, to use Giroir as a "back-up plan" in the event he/she later arbitrarily changes his/her mind and wishes to file a claim to the prejudice of the defendant. I find this conclusion in direct opposition to both Giroir and the well-established rules of prescription. For these reasons, I respectfully dissent from the majority opinion.

ON REHEARING
VICTORY, J.[*]
We granted an application for rehearing in this case to consider whether our holding on original hearing conflicts with our decision in Borel v. Young, 07-0419 (La.11/27/07), 989 So.2d 42 (on rehearing). On original hearing, this Court held that an amended pleading adding a new plaintiffs wrongful death claim after the medical malpractice action prescribed related back to the timely filing of the original petition pursuant to La. C.C.P. art. 1153 *203 and the analysis set forth in Giroir v. South La. Med. Ctr., Div. of Hospitals, 475 So.2d 1040 (La.1985). Further, we held that the new plaintiff was entitled to the benefit of the interruption of prescription on her survival action such that the amended petition adding her as a plaintiff to that cause of action was timely filed under the reasoning of Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383 (La.1993). After reconsidering the record and the applicable law, we find that we erred on original hearing and now hold that the newly added plaintiff's claims have prescribed under the provisions of the Medical Malpractice Act (the "Act"). We therefore vacate our decision on original hearing, reverse the judgment of the court of appeal, and order that the case be remanded to the district court to grant defendants' exception of prescription.

FACTS AND PROCEDURAL HISTORY
On October 10, 12, and 13, 2000, Terry Wan-en received medical treatment from various health care providers, and, on October 13, 2000, he died. Alleging that his death was caused by substandard medical care which led to a delay in diagnosing and treating a heart attack, on September 11, 2001, Pamela Warren and Theresa Rene Warren filed a medical malpractice complaint with the Louisiana Patient's Compensation Fund. Pamela and Theresa Warren are the wife and daughter of the decedent. At the time the PCF complaint was filed, the decedent's other daughter, Sarah Warren Jimenez ("Sarah"), was aware of the filing but consciously chose not to be involved in the matter.[**] On August 27, 2002, a medical review panel issued an opinion stating that there was no breach of the standard of care, and the opinion was received by counsel for plaintiffs on September 19, 2002. On November 25, 2002, Pamela Warren and Theresa Warren timely filed suit against defendants[1] in the Nineteenth Judicial District Court alleging wrongful death and survival actions. Again, Sarah chose not to join in the suit. On July 6, 2004, plaintiffs filed a First Supplemental and Amending petition adding Sarah as a plaintiff asserting survival and wrongful death claims.
Defendants filed an exception of prescription arguing that Sarah's claims had prescribed because she did not file her action within the time periods provided by the Act. Defendants asserted that Sarah testified in deposition that she was aware of the filing of the medical review complaint and the instant lawsuit but chose not to participate. However, after she became aware that she might be called by plaintiffs as a witness, she determined that she might as well be part of the lawsuit. Defendants argued that these facts did not allow the relation back of her claims to the original petition under Giroir and that they were prejudiced by the addition of a new plaintiff nearly three years after the request for a medical review panel and nineteen months after the lawsuit was filed.
The trial court overruled the defendants' exception of prescription and the court of appeal denied the defendants' writ, citing La. C.C.P. art. 1153 and Giroir. Warren v. Louisiana Medical Mut. Ins. Co., 06-412 (La.App. 1 Cir. 5/18/06). This Court then remanded the case to the court of appeal for briefing, argument and opinion. Warren v. Louisiana Medical Mut. Ins. *204 Co., 06-1547 (La.9/29/06), 938 So.2d 693. Again, the court of appeal denied the writ relying on Giroir. Warren v. Louisiana Medical Mut. Ins. Co., 06-412 (La.App. 1 Cir. 2/9/07), 2007 WL 437652. This Court granted the defendants' writ application, Warren v. Louisiana Medical Mut. Ins. Co., 07-492 (La.4/27/07), 955 So.2d 670, and affirmed the judgment of the court of appeal. Warren v. Louisiana Medical Mut. Ins. Co., 07-0492 (La.12/2/08), 21 So.3d 186. On February 13, 2009, we granted the defendants' application for rehearing.

DISCUSSION
La. R.S. 9:5628(A) provides the time periods in which medical malpractice actions must be filed, as follows:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
In order to file a medical malpractice action, a party must first present his proposed complaint to a medical review panel for review. La.R.S.40:1299.47(B)(1)(a)(i). La. R.S. 40:1299.47(A)(2)(a) provides for the suspension of the period provided in La. R.S. 9:5628 during the time the complaint is pending before the medical review panel, as follows:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review....[2] *205 Recently, in Borel, supra, four members of this Court held that the three year time period in La. R.S. 9:5628 was prescriptive, rather than peremptive.[3] In so doing, we reaffirmed our prior holding in Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723-24 (La.1986), which had held that the one and three year periods were prescriptive "with only the single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect."
In Borel, the plaintiffs timely filed a malpractice complaint with the Louisiana Patient's Compensation Fund against two doctors and a hospital, thereby satisfying the requirements of La. R.S. 40:1299.47(B)(1)(a)(i) that no action may be filed against a health care provider before a claimant's proposed complaint has been presented to a medical review panel. This timely request suspended prescription until ninety days following notification of the panel's issuance of an opinion against all parties named in the complaint and all joint and solidary obligors and all joint tortfeasors. La. R.S. 40:1299.47(A)(2)(a). Within 90 days of being notified of the panel's opinion, the plaintiffs filed suit in district court against the hospital, but not against the two doctors. After the three year period provided in La. R.S. 9:5628, plaintiffs attempted to amend their petition to add the doctors and their insurer, and when this failed, they filed a separate lawsuit against them which was later consolidated with the original suit. In response, the defendants filed an exception of prescription. Plaintiffs contested, arguing that La. C.C. art. 2324(C), providing that "[interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors," applied such that their timely suit against the hospital interrupted prescription against the other joint tortfeasors. In Borel, we disagreed and held that "the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tortfeasors, LSA-C.C. art. 2324(C)." Borel, supra at 69.
In reaching this conclusion, we relied on our earlier decision in LeBreton, supra. In LeBreton, the plaintiffs filed their medical malpractice action in the district court before filing their request for review before a medical review panel as required by La. R.S. 40:1299.47(B)(1)(a)(i). The plaintiffs' district court suit was dismissed without prejudice as premature. Several years later, the medical review panel notified plaintiffs of its opinion, but plaintiffs did not file suit within 90 days as required by *206 La. R.S. 40:1299.47(A)(2). Plaintiffs argued that its suit was not prescribed because the filing of suit in district court prior to filing the medical review panel complaint interrupted prescription under La. C.C. art. 3466 and 3472. Because prescription was interrupted at the time their medical review request was filed and because that filing suspended prescription until 90 days after being notified of the panel decision, plaintiffs argued that prescription began again at that time and they had one year after the expiration of the suspensive period of La. R.S. 40:1299.47(A)(2) in which to file suit. This Court disagreed, holding as follows:
Actions for medical malpractice against certain health care providers, such as the defendants herein, are governed by special laws, Part XXIII of Chapter 5, Miscellaneous Health Provisions of La. R.S. 40:1299.41, et seq., and La. R.S. 9:5628, which delineate the liberative prescription applicable to actions for medical malpractice under Title 40. It specifically provides, inter alia, that the filing of a medical malpractice claim with the board only suspends the time within which suit must be instituted in a district court. On the other hand, if the general codal articles of 3466 and 3472 apply ... then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out. Therein lies the conflict. If we let this ruling stand, we will condone and encourage the technique of unnecessarily prolonging malpractice litigation by a lesser standard. The party who improperly files a premature medical malpractice suit without first filing the claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, gains an additional year of prescription in addition to the suspended time provided by the Medical Malpractice Act, within which to file the suit anew.
714 So.2d at 1229-30. Thus, we held that the general provisions on interruption of prescription found in La. C.C. art. 3462 could not be simultaneously applied with the specific provision on suspension of prescription contained in La. R.S. 40:1299.47(A)(2)(a) to defeat the defendants' exception of prescription.
In relying on LeBreton in Borel, we held although LeBreton was presented in a different factual and procedural posture, the "holding in LeBreton clearly stands for the principle that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription to the exclusion of the general codal articles on interruption of prescription," and "that holding is broad enough to extend to the instant case." Borel, supra at 67. We noted in Borel that a contrary holding applying La. C.C. art. 2324(C) "would potentially subject a health care provider to an indefinite period of prescription, even after the claim has been evaluated by a medical review panel, a result clearly at odds with the purpose of the [Act], which ... was to curtail lengthy periods for filing malpractice suits ..." Id. at 68, n. 12.
In reviewing our opinion on original hearing, we see that it is contrary to Borel in two respects. First, on original hearing this Court relied on Williams, supra, to hold that because Sarah shared her survival cause of action with her mother and sister, prescription on that cause of action was interrupted when Sarah's mother and sister timely filed suit. However, while Williams held that the general codal articles on interruption of prescription, La. C.C. art. 3462,[4] 1799,[5] and 3503,[6] applied *207 such that suit against one solidary obligor interrupted prescription against another solidary obligor, Williams was not a medical malpractice action. For had it been a medical malpractice action, Borel would dictate that the specific provisions of the Act apply to the exclusion of the general code articles on interruption of prescription against solidary obligors, just as the specific provisions of the Act regarding suspension of prescription applied to the exclusion of the general code article on interruption of prescription against joint tortfeasors under Borel. Because the holding of Williams has no application in the medical malpractice area and its application in that area is contrary to Borel, we erred in relying on Williams on original hearing to hold that Sarah's survival claim had not prescribed.
Secondly, our holding on original hearing that the amended pleading adding a new plaintiff after the expiration of the prescriptive period related back to the timely filing of the original petition pursuant to La. C.C.P. art. 1153 is contrary to Borel, as well as to LeBreton. La. C.C.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." LeBreton and Borel stand for the proposition that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription to the exclusion of the general codal articles on interruption of prescription. These cases are equally applicable here. The expressed reasoning behind the holding in LeBreton was that if the general rules on interruption were to apply to a medical malpractice action, "then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out," and "[t]herein lies the conflict." LeBreton, supra at 1230. Although La. C.C.P. art. 1153 does not "interrupt" prescription as did the general codal articles in LeBreton and Borel, "relation back" of an untimely filed amended petition directly avoids the application of prescription by allowing a claim that would have otherwise prescribed to proceed. The effect of this interference is that if relation back is allowed, the "prescription and suspension provisions provided in the Medical Malpractice Act will be written out," which, as we recognized in LeBreton, presents "a conflict." LeBreton, supra at 1230. Further, the application of La. C.C.P. art. 1153 "would potentially subject a health care provider to an indefinite period of prescription, ... a result clearly at odds with the purpose of the [Act]." Borel, supra at 68, n. 12. Because medical malpractice actions are governed by the specific provisions of the Act regarding prescription and suspension of prescription, under Borel, we find that any general codal article which conflicts with these provisions may not be applied to such actions in the absence of specific legislative authorization in the Act. The Act has no rules allowing relation back of pleadings for medical malpractice claims. The application of Article 1153 would permit the adding of an plaintiff subsequent *208 to the expiration of the three-year period provided for in La. R.S. 9:5628, and would read out of the statute the prescription and suspension period provisions by La. R.S. 9:5628 and La. R.S. 40:1299.47; therefore, La. C.C.P. art. 1153 may not be applied to the medical malpractice action under the reasoning of LeBreton and Borel.[7]

CONCLUSION
We erred on original hearing allowing relation back of a pleading adding a plaintiff after the prescriptive period provided by the Act had run. Our prior jurisprudence holds that medical malpractice claims are governed exclusively by the specific provisions of the Act regarding prescription and suspension of prescription. For that reason, our holding on original hearing that a general codal article providing for interruption of prescription applied to defeat prescription on Sarah's survival claim under the Act was error. Further, because any general codal article which conflicts with the operation of prescription under the Act cannot be applied in a medical malpractice case, we erred in allowing a general codal article allowing relation back of a pleading to defeat prescription on Sarah's wrongful death claim under the Act.[8]

DECREE
For the reasons expressed herein, the judgment of the court of appeal is reversed and the matter is remanded to the trial court to grant defendants' exception of prescription.
REVERSED AND REMANDED.
JOHNSON and WEIMER, JJ., dissent and assign reasons.
KNOLL, J., concurs in the result and assigns reasons.
GUIDRY, J., concurs in the result.
WEIMER, J., dissents and assigns reasons.
JOHNSON, Justice, dissents and assigns reasons.
I must respectfully dissent from the majority's opinion on rehearing. This Court granted defendants' application for rehearing to consider whether our opinion on original hearing conflicts with this Court's opinion in Borel v. Young, 07-C-0419 (La.11/27/07), 989 So.2d 42 (on reh'g). Because I find no conflict with our decision in Borel, I would reinstate our original judgment, affirming the decision of the court of appeal.
*209 In our original opinion, we found that the Plaintiffs' amendment to their petition, filed almost four years after death, adding a major child's survival and wrongful death claims (Sarah Warren Jimenez), related back to the timely filing of the original petition. This Court applied La. C.C.P. art. 1153 and the factors set forth in Giroir v. South La. Med. Ctr., Div. Of Hospitals, 475 So.2d 1040 (La.1985) in finding that the amendment related back to the date of filing of the original petition for wrongful death and survival actions by the wife and another major child of the decedent against the defendant health care providers.
In their application for rehearing, defendants argue that our original opinion is in conflict with Borel, and creates a different standard for late-added plaintiffs and late-added defendants.[1] Unlike this matter, Borel involved the plaintiffs' attempt to add a new and unrelated defendant to a pending medical malpractice suit. In this case, all defendants were timely sued. There is no concern in this case, unlike Borel, about any conflict between the general codal articles on interruption of prescription and the specific provisions of the Medical Malpractice Act relating to suspension of prescription. As the Plaintiffs have pointed out, the issue here is not about interrupting or suspending prescription. La. C.C.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of filing the original petition." Thus, relation back is neither a suspension or an interruption of prescription, and when applied, it is as if the amended claim has been filed with the original petition.
While the majority acknowledges that the Medical Malpractice Act has no rules relative to relation back of pleadings, the majority still finds that the La. C.C.P. art. 1153 cannot be applied. The majority reasons that any general codal article which conflicts with the provisions of the Medical Malpractice Act cannot be applied to medical malpractice actions in the absence of specific legislative authorization in the Act.
Contrary to the majority's holding, I agree with the opinion expressed in Justice Weimer's concurring opinion on original hearing. Because the Medical Malpractice Act is silent with respect to the issue of relation back of pleadings, I find that there is no conflict between the general codal articles and the specific provisions of the Medical Malpractice Act. Thus, these various provisions should be read in conformity with each other. Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, 579. Therefore, I find no reason why La. C.C.P. art. 1153 should not be applied here.[2]
Because I find that this case is distinguishable from Borel, I find no conflict, and no reason to reverse our original opinion.[3]
*210 KNOLL, Justice, concurring in the result.
With all due respect, while I concur in the result reached by the majority dismissing plaintiffs' suit, I disagree with the majority's reliance upon the plurality opinion Borel v. Young, 07-0419 (La.7/1/08), 989 So.2d 42, on rehearing, which has no precedential authority to support the holding that the three-year provision in La.Rev. Stat. § 9:5628 is prescriptive, and its reaffirmation of Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986).[1] For the following reasons. I find plaintiffs' action is perempted by the clear language of La.Rev.Stat. § 9:5628, and write separately to reiterate my position on the issue of the peremptive nature of La.Rev.Stat. § 9:5628's three-year provision, which issue remained unresolved in our jurisprudence in light of the lack of precedential authority of the plurality opinion on rehearing in Borel. My position as clearly and expressly reasoned in my concurrence in Borel on rehearing is dispositive of the issue raised in the present case. Given the importance of this issue of peremption and the majority's reliance on Borel, I find it necessary to once again address the plurality opinion and its flawed conclusion.
The plurality opinion on rehearing in Borel concluded the 1987 amendments and reenactment of La.Rev.Stat. § 9:5628 did not substantively change the law and reaffirmed Hebert's interpretation of the three-year provision as prescriptive, but found that under LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, plaintiffs' action had prescribed. I concurred in the result only, finding the plaintiffs' action was perempted by the clear language of La.Rev.Stat. § 9:5628, as stated by the majority on original hearing in Borel as well as for the reasons contained herein.
The seminal issue raised by the writ in Borel was whether the three-year time limitation contained in La.Rev.Stat. § 9:5628 is prescriptive and, therefore, susceptible to interruption as the plaintiffs suggested, or peremptive.[2] The correct *211 disposition of the issue turned on well-established statutory interpretation as explained in the majority opinion on original hearing.
Considering the plain, explicit language of the statute, the obvious purpose behind the statute, and the readily apparent public policy, which mitigates against suspension, interruption, or renunciation of the time limit and in favor of certainty in terminating causes of action, as discussed in detail in the majority opinion on original hearing in Borel and in my concurrence on rehearing, I find La.Rev.Stat. § 9:5628 establishes a three-year peremptive time period. Because plaintiffs action was brought over three years after the alleged act of malpractice, under La.Rev.Stat. § 9:5628, her action is extinguished by peremption.
Moreover, despite the majority's reliance on Borel's reaffirmation of Hebert's interpretation of the three-year provision as prescriptive, I am still strongly of the opinion that Hebert should be overruled. In Hebert, this Court held that La.Rev. Stat. § 9:5628 is in both of its features a prescription statute. In reaching this conclusion, this Court looked to several indicators (structural considerations). First, the Court examined the title of 1975 La. Acts 808 enacting this provision, which stated that the purpose of the act is to establish a new section to provide for a "maximum prescriptive period" with regard to medical malpractice claims, as indicative of the Legislature's purpose in enacting the particular limitation periods. Second, the Court noted that peremption statutes generally create the right of action and stipulate the delay during which the right may be exercised, and the right of action at issue long preceded the enactment of La.Rev.Stat. § 9:5628.[3] Third, the Court looked for the existence of a claim of a public law nature and a period of less than one year, and La.Rev.Stat. § 9:5628 qualified on neither score. The Court did note that the defendant's strongest argument in support of peremption was that the language of the statute suggests that peremption is intended, an extinguishment of the right upon lapse of a period of time. The Court found, however, that not one case in the jurisprudence considering the distinction between prescription and peremption has accentuated the language *212 used in a given statute as determinative of which was intended, and had the legislature meant it to be peremptive it could have so entitled that act rather than calling it "a prescriptive period." Notably, this reasoning conflicts with La. Civ.Code art. 9 and La.Rev.Stat. §§ 1:3 & 4 on the interpretation of laws. Also, the title to the 1975 Act stated the purpose of the act was to establish a new section to provide a maximum prescriptive period and abandonment with respect to medical malpractice claims. The term abandonment seems indicative of extinguishment along the lines advanced by the defendant in Hebert. Further, "maximum prescriptive period" suggests the strictest limit available, i.e., peremption, and the closest parallel to peremption in French law is called "strict prescription." Also, the Legislature did not officially adopt peremption into the code until 1982 and may have been hesitant to use the term when the statute was written.
Then, in 1987, within a year of the Hebert decision, the Legislature amended and reenacted La.Rev.Stat. § 9:5628 in an act that dealt primarily with psychologists. The original version of 1987 La. Acts 915 did not contain any amendments to La. Rev.Stat. § 9:5628. The amendments and reenactment first appear in the engrossed version of the bill, and the legislative history of the act reveals the amendments and reenactment were proposed by the House Committee on Health and Welfare to include psychologists in the list of enumerated persons against whom actions for damages arising out of patient care must be brought within the stated time limits and changed the language as to the three-year period from"; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect"to read"; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect."
Based on my research, this Court, prior to our ruling on original hearing, had never addressed the effect of the amendments and the reenactment, even though this Court had continued to rely on Hebert and even in a footnote in David v. Our Lady of the Lake Hosp., Inc., 02-2675 (La.7/2/03), 849 So.2d 38, stated that the "three-year limitation is prescriptive, not peremptive, citing Hebert, as reaffirmed in State Bd. of Ethics v. Ourso, 02-1978, p. 4 (La.4/9/03), 842 So.2d 346, 349." Ourso, however, did not address the amendments or reenactment of La.Rev.Stat. § 9:5628. but rather affirmed Hebert's analysis of the 1975 Act. Also, not relying on Hebert, this Court in Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120, describes the time limitations contained in La. R.S. 9:5628 as "special prescriptive and peremptive periods for malpractice actions."
Yet, the plurality opinion on rehearing in Borel asserted that for more than twenty years this Court had consistently followed and endorsed the holding in Hebert, which formed jurisprudence constante. This assertion was misleading and in my view wrong because it did not take into consideration the holding in Spradlin that the three-year provision is peremptive and its effect on this so-called formation of jurisprudence constante. Most notably, this Court's reliance on, discussion of, or citing to Hebert or its three-year prescriptive period analysis has either been in obiter dicta in cases where the three-year provision did not come into play and the discussion of which was not necessary to the resolution of the issues, *213 Perritt v. Dona, 02-2601, p. 15 (La.7/2/03), 849 So.2d 56, 66 (medical malpractice case involving the propounding of interrogatories and exceptions of vagueness or no cause of action); Campo v. Correa, 01-2707, pp. 8-10 (La.6/21/02), 828 So.2d 502, 508-09 (medical malpractice claim brought well within three years from the date of the act of malpractice; directly quoting Hebert in its interpretation of provision); Bailey v. Khoury, 04-0620, p. 8-9 (La.1/20/05), 891 So.2d 1268, 1275 (malpractice suit Hied within a year of child's birth, well within three years from the act of malpractice); White v. West Carroll Hosp., Inc., 613 So.2d 150, 154-55 (La.1992)(medical malpractice claim brought well within three years), in the interpretation of non-LMMA provisions, State Bd. of Ethics v. Ourso, 02-1978, pp. 6-7 (La.4/9/03), 842 So.2d 346, 350-51 (Campaign Finance Disclosure Act); State Through Div. of Admin. v. McInnis Bros. Const., 97-0742, pp. 5-7 (La.10/21/97), 701 So.2d 937, 941-42 (Public Works Act); Segura v. Frank, 93-1271, pp. 17-18 (La.1/14/94), 630 So.2d 714, 726-27 (automobile accident involving uninsured motorists and the LIGA: relying on Hebert's consideration of the nature of a "pending" lawsuit); Naquin v. Lafayette City-Parish Consol. Government, 06-2227, pp. 16-17 (La.2/22/07), 950 So.2d 657, 668 (Local Government Fair Competition Act; distinction between peremption and prescriptive periods); Exxon Pipeline Co. v. Louisiana Public Service Com'n, 98-1737, p. 14, n. 10 (La.3/2/99), 728 So.2d 855, 863, n. 10 (Public Service Commission; citing Hebert for the principle that Legislative purpose is one of the most significant factors in distinguishing peremptive and prescriptive statutes); Reeder v. North, 97-0239, p. 12 (La.10/21/97), 701 So.2d 1291, 1298 (legal malpractice provision; citing Hebert as authority that contra non does not apply to peremption), or in the application of the pre-1987 version of La.Rev. Stat. § 9:5628, David v. Our Lady of the Lake Hosp., Inc., 02-2675, p. 1, n. 1(La.7/2/03), 849 So.2d 38, 41, n. 1(1979 blood transfusion); Whitnell v. Silverman, 95-0112. p. 6 (La.12/6/96), 686 So.2d 23, 27 (constitutionality of provision, 1986 malpractice suit); Hillman v. Akins, 93-0631, p. 5 (La.1/14/94), 631 So.2d 1, 4 (all acts of malpractice at issue occurred in 1985 or 1986; cites Hebert as holding discovery rule category of contra non inapplicable to claims brought under La. R.S. 9:5628); Taylor v. Giddens, 618 So.2d 834, 842(La.1993)(1986 malpractice claim arising out of alleged malpractice in 1982; citing Hebert in support of the position that the discovery rule is inapplicable to survival actions filed more than three years after malpractice); Whitnell v. Menville, 540 So.2d 304, 308 (La.1989)(claim arising out of treatment in 1980; suit filed 1986; distinguishes Hebert); Crier v. Whitecloud, 496 So.2d 305, 307-08 (La. 1986) (1983 malpractice suit);[4]Crier v. Whitecloud, 486 So.2d 713, 714 (La.1986) (1983 malpractice suit; released on the same day as Hebert). Admittedly, Spradlin also contains dicta.
Commentators have been critical of the Hebert decision and have also interpreted this provision as peremptive. FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LOUISIANA *214 TORT LAW §§ 10.05, 10.06, n. 12 (2006 ed.); Donald Baron Wiener, Hebert v. Doctors Memorial Hospital: Three-Year Limit on Exercising Medical Malpractice Claims Held to Be Prescriptive, 61 Tul. L.Rev. 941 (1987). At the time of its release, commentators criticized the Court's decision to focus on structural arguments, while never explicitly addressing the policy concerns underlying La.Rev.Stat. § 9:5628 and whether a peremptive interpretation was necessary to implement them. Wiener, supra, at 948. Policy, however, apparently was the decisive factor; yet, critics commented upon the Court's failure to discuss policy, which was argued left the impression that the Court's reasoning was based only on weighing several structural criteria, when in reality those tests were at most only tools for searching for the policy underlying the statute. Id. More disturbing to the critic, though, was the Court's refusal to be bound by the clear language of the statute, the disregard of which, on its face, was inconsistent with the method of statutory interpretation mandated by the Civil Code. Id. at 948-49. The criticism concludes:
In drafting Revised Statute section 9:5628, the legislature specifically considered how far to subordinate private interests to those of society and described how the statute was to function. The legislature decided that, `in all events,' medical malpractice actions would be extinguished after three years. When the legislature makes such an explicit policy judgment and chooses clear language to express it, the court may be abusing its discretion by ignoring that choice. In this case, the court's purported search to implement the policy behind the statute became, in effect, a review of the legislature's policy choice. The legislature did not sanction that authority by adopting the peremption conception in 198[2].
Id. at 949.
Moreover, prior to Hebert's release, commentators perceived the three-year provision as peremptive, explaining:
Statutes of limitations specifically for malpractice suits have been shortened, where none existed they have been enacted, and the discovery rule has been sharply curtailed. The most common approach, instituted in nine states,[[5]] is reflected in the Louisiana provision. A fixed prescriptive period of short duration (1 year in Louisiana) begins to run upon discovery of injury. Superimposed upon this, however, is a peremptive period of three years from the date of the tort, after which the suit is barred regardless of when discovered.
KANDY G. WEBB, Comment, Recent Medical Malpractice LegislationA First Checkup, 50 Tul.L.Rev. 655, 673 (1976).
Although prior to Hebert there was no opinion by this Court on this precise issue, the appellate courts did address the issue. Hebert cited to two cases decided by this Court that had "treated § 9:5628 as prescriptive." 486 So.2d at 723. These cases were Lott v. Haley, 370 So.2d 521, 524 (La.1979), which dealt directly with the retroactive application of La.Rev.Stat. § 9:5628 to an act of malpractice occurring prior to its enactment, and Chaney v. State of La. DHHR, 432 So.2d 256, 258-59 (La. 1983), which did not address peremption, but found plaintiffs' cause of action brought in 1981 arising out of malpractice, which occurred in 1977, but was not discovered until 1979, had prescribed. *215 Interestingly, Chaney affirmed the holding of the First Circuit that found the action for malpractice which was discovered in 1979, but not filed in the courts until 1981, was perempted. Chaney v. State of La. DHHR, 423 So.2d 717, 717-18 (La.App. 1st Cir.1982). Admittedly, this Court specifically found the court of appeal did not err in affirming the judgment of the trial court sustaining defendants' exception of prescription, but it did not reverse the court of appeal's finding that the matter was perempted.[6]
Hebert next asserted that the only appellate cases on this issue had decided that La.Rev.Stat. § 9:5628 was a prescriptive statute or assumed it was so. The Court cited Chalstrom v. Desselles, 433 So.2d 866, 868 (La.App. 4th Cir.), writ denied, 438 So.2d 215 (La.1983), which did find that the three-year provision established a simple prescription, and Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113, 114 (La.App. 3d Cir.1985), which cited to Chalstrom as authority for that position.[7]
The Hebert court, however, did not address either Blanchard v. Farmer, 431 So.2d 42, 42-43 (La.App. 1st Cir.), writ denied, 438 So.2d 571 (La.1983), in which the plaintiff's arguments describe the provision as the peremptive period provided by La.Rev.Stat. § 9:5628, and the court found that under La.Rev.Stat. § 9:5628, plaintiff's claim was "barred because it was not filed within three-years of the act of malpractice,"[8] or Valentine v. Thomas, 433 So.2d 289, 291 (La.App. 1st Cir.), writ denied, 440 So.2d 728 (La.1983), which stated "Plaintiff did not discover the alleged act of malpractice until after the three year peremptory period provided in LSA-R.S. 9:5628 had passed; therefore, he was precluded from bringing an action for damages." While both Blanchard and Valentine primarily concern the applicability and constitutionality of the statute rather than an interpretation of its provisions, these cases, in conjunction with Chaney, indicate a trend in the First Circuit to treat the three-year provision as peremptive.
Interestingly, the First Circuit, in Hebert v. Doctors Memorial Hosp., 477 So.2d 1227, 1230 (La.App. 1st Cir.1985), found that the three-year provision did not come into play, so the Court did not need to consider the question of whether the three-year period was prescriptive or peremptive. In a footnote, the court stated, however, that the question had been addressed: the Fourth Circuit in Chalstrom held the provision prescriptive, but on the other hand, the First Circuit in Blanchard had stated, albeit in dicta, that the period *216 was peremptive, indicating a potential split in the two circuits. Id. at 1230, n. 3. The appellate court did not address either Valentine or Chaney in the note, although it did state that the instant case graphically demonstrated an untoward result of holding the three-year period peremptive in that a plaintiff, who can take advantage of interruption of prescription, may be able to keep his claim alive much longer than the three-year limit imposed on the plaintiffs, who come under the discovery rule. Id. at 1230, n. 3.
In Grant v. Carroll, 424 So.2d 389, 392 (La.App. 2d Cir.1982), the court held that plaintiff's claim was prescribed by the passage of three years from the date of malpractice, and in Juneau v. Hartford Ins. Co., 458 So.2d 1011, 1013 (La.App. 3d Cir.), writ denied, 462 So.2d 198 (La.1984), the court found the prescription applicable in medical malpractice cases was provided by La. R.S. 9:5628, but the case did not involve the three-year provision.
Thus, a split in the Circuits, particularly the First and Fourth, existed at the time Hebert was decided. Notwithstanding, this Court in Hebert did not address the split, nor was the distinction between peremption and prescription addressed by this Court in Chaney, even though the appellate court decision in that case clearly determined the action filed three years after the act of malpractice was perempted. Interestingly, prior to our opinion on original hearing in this case, the appellate courts were once again in conflict over the treatment of the three-year provision as either prescriptive or peremptive, as apparently were the holdings of this Court in light of Spradlin. See LeBreton v. Rabito, 94-1440 (La.App. 4 Cir. 2/23/95), 650 So.2d 1245, 1247 (holding the reference in La. Rev.Stat. § 40:1299.47(B)(2)(b) "are to the three year peremption of R.S. 9:5628 along with its one year prescription"); Pena v. Williams, 03-0982, p. 4 (La.App. 4 Cir. 2/4/04), 867 So.2d 801, 804 (holding the three-year provision of La.Rev.Stat. § 9:5628 is peremptive); Borel v. Young, 06-352, p. 5 (La.App. 3 Cir. 12/29/06), 947 So.2d 824, 827 (relying on Hebert in holding the three-year provision prescriptive in nature).
Furthermore, as discussed in the plurality opinion on rehearing in Borel and by the majority in the present case, La.Rev. Stat. § 40:1299.47(A)(2)(a) provides that "[t]he filing of the request for a review of a [malpractice] claim shall suspend the time within which suit must be instituted, in accordance with this Part; until ninety days following notification, by certified mail, ... of the issuance of the opinion" by the panel. However, the statute also provides that a health care provider "may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel." and "[i]f the court finds that the claim had prescribed or otherwise was perempted prior to being filed, the panel, if established, shall be dissolved." La.Rev. Stat. § 40:1299.47(B)(2)(a) and (b)(emphasis added). La.Rev.Stat. § 9:5628 speaks to the time limitations within which a claim for malpractice must be brought. If, as Hebert and the plurality opinion in Borel and now the majority herein find, the time limits are prescriptive, then how could a court under La.Rev.Stat. § 40:1299.47(B)(2)(b) find the matter was perempted? A reading of these provisions implies exceptions of both prescription and peremption arise from the provisions of La.Rev.Stat. § 9:5628. Such reading would support the conclusion that the three-year provision is peremptive.
Significantly, the language "or otherwise was preempted" was added by 1984 La. *217 Acts No. 435, § 5. Pursuant to its statutory revision authority, the Louisiana State Law Institute substituted "perempted" for "preempted" in 1986. I reviewed the legislative history of 1984 La. Acts No. 435 that added the phrase "or otherwise was preempted" to La.Rev.Stat. § 40:1299.47(B)(2)(b). At the time of the addition, present day La.Rev.Stat. § 40:1299.47(B)(2)(a) and (b) were contained in the same subsection, (B)(2), and prior to the amendment provided:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise the peremptory exception of prescription in court at any time, without need for completion of the review process by the medical review panel. If the court finds that the claim had prescribed prior to being filed, the panel, if established, shall be dissolved.
The amendment revised the provision as follows:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue The peremptory exception of prescription in court at any time, without need for completion of the review process by the medical review panel. If the court finds that the claim had prescribed or otherwise was preempted prior to being filed, the panel, if established, shall be dissolved.
My review of the history does not provide an explanation for the revision, although I believe it is self-explanatory and supportive of the peremptive interpretation of the three-year provision. Nevertheless, my reading of the provisions of La.Rev.Stat. § 40:1299.47 does not support the holding in Hebert or the plurality opinion on rehearing in Borel or the majority opinion in this case that the three-year provision is prescriptive.
The plurality opinion on rehearing in Borel also showed an abhorrence to overruling Hebert's holding on the prescriptive nature of the three-year provision, but did not hesitate to effectively overrule Hebert's holding on the interruption of prescription by the filing of suit against a solidary tortfeasor. To reach its conclusion, which does effectively overruled a portion of Hebert, the plurality opinion extended the holding in LeBreton, which found that malpractice plaintiffs, as a matter of law. could not benefit by the simultaneous application of the general provision on interruption of prescription found in La. Civ.Code art. 3462 with the specific provision on suspension of prescription contained in La. Rev. Slat. 40:1299.47(A)(2)(a), to the facts of this case. In its criticism of the majority opinion on original hearing in Borel, the plurality opinion on rehearing cited to the principles of jurisprudence constante in its refusal to overrule the Hebert holding as to the three-year provision. However, jurisprudence constante does not give the Court license to perpetuate error as we are bound under our Constitution and the Civil Code to uphold and abide by the law. James L. Dennis. Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent, 54 La. L.Rev. 1, 10 (1993-1994). In my view, the affirmation of the holding in Hebert that the three-year provision was prescriptive was clearly a perpetuation of error as demonstrated by the reasons set forth in my concurrence, because such an interpretation does not uphold or abide by the clear and unambiguous law enacted by the Legislature. Therefore, I would overrule Hebert in its holding that the three-year provision of La.Rev.Stat. § 9:5628 is prescriptive.
*218 Finally, the majority again citing to Borel relies upon the holding in LeBreton, which I authored as organ for the Court. The issue before the LeBreton court was whether the simultaneous application of the interruption and suspension of prescription provisions in the medical malpractice setting was correct. The holding in LeBreton did not exclude the application of the general provisions on interruption of prescription in medical malpractice cases in other instances, just to the situation where the plaintiff sought to benefit by the simultaneous application of the interruption and suspension provisions. Neither in Borel nor in this case did the plaintiffs seek simultaneous application of the interruption and suspension provisions, and the holding in LeBreton does not support the conclusion reached in either the plurality or in the majority opinion in this case. Broadening the holding in LeBreton is further rendered unnecessary by a correct interpretation and application of the three-year peremptive period contained in La. Rev.Stat. § 9:5628.
In conclusion, because peremption may be recognized by the court on its own motion, see La. Civ.Code art. 3460, I would dismiss plaintiff's action as perempted in accordance with the clear and unambiguous provisions of La.Rev.Stat. § 9:5628.
WEIMER, J., dissenting.
I respectfully dissent from the opinion on rehearing for the reasons stated in my concurrence following original hearing.
NOTES
[1] In her deposition, Sarah explained that her poor relationship with her mother, who has multiple sclerosis, was exacerbated by the death of her father and that she could not face the emotional ordeal of a lawsuit. According to Sarah, her mother abandoned the two daughters after the father's death, and they did not speak for over three years. She explained that, because she came to realize she could be subpoenaed to testify as a witness, i.e., become involved in the suit, she later decided to join the case as a party plaintiff.
[2] The defendants also argue the district court erroneously relied on Phillips and Tureaud for the proposition that the filing of a wrongful death claim by one sibling interrupted prescription as to the other sibling. However, they acknowledge that the court of appeal resolved the case based on Giroir and did not reach the question of whether the trial court erred in relying upon these cases. As did the court of appeal, we need not determine whether the district court actually relied on these cases in overruling the defendant's exception of prescription and, if so, whether that reliance was or was not correct.
[3] According to her deposition, Sarah explained that her mother became distraught at the news of her father's death and was taken to the hospital's emergency room. Because her mother was in the emergency room and because Theresa was then still a minor, the hospital asked Sarah, who was 19 or 20 years old at the time, to sign various papers acknowledging her father's death. Sarah was thus named, and her address provided, as the "informant" on her father's death certificate.
[1] This version is identical the versions referenced by both the Ray and Giroir courts in their 1983 and 1985 decisions. Ray v. Alexandria Mall, 434 So.2d 1083, 1085 (La. 1983); Giroir, 475 So.2d at 1043.
[2] The current version of F.R.C.P. 15(c) provides:

An amendment to a pleading relates back to the date of the original pleading when:
(A) the law that provides the applicable statute of limitations allows relation back;
(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set outor attempted to be set outin the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
(i) received such notice of the action that it will not be prejudiced in defending on the merit s; and
(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
F.R.C.P. 15(c) (2008).
[3] The Ray court provided the following four criteria for the relation back of an amendment that adds or substitutes a defendant: (1) the amended claim must arise out of the same transaction or occurrence set forth in the original pleading; (2) the purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits; (3) the purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; and (4) the purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed. Ray, 434 So.2d at 1086 (emphasis added).
[4] The Giroir court provided the following four criteria for the relation back of an amendment that adds or substitutes a plaintiff: (1) the amended claim must arise out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either must have known or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs must be sufficiently related so that the added or substituted party is not wholly new or unrelated; and (4) the defendant must not be prejudiced in preparing and conducting his defense. Giroir, 475 So.2d at 1044.
[1] This article was modeled upon the federal rules of procedure, specifically Federal Rule of Civil Procedure 15(c) which currently provides, in pertinent part:

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
(A) the law that provides the applicable statute of limitations allows relation back;
(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set outor attempted to be set outin the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
(i) received such notice of the action that it will not be prejudiced in defending on the merit s; and
(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
[2] Giroir v. South Louisiana Medical Center, Division of Hospitals, 475 So.2d 1040, 1044 (La. 1985) (citations omitted).
[3] I note parenthetically that I merely concurred in the result of the majority's opinion on rehearing in Borel, believing that the three-year time period of La. R.S. 9:5628 is peremptive, as found in the Borel original opinion.
[*] Retired Judge Philip Ciaccio, assigned as Justice ad hoc, sitting for Justice Chet D. Traylor, now retired.
[**] Sarah was at the age of majority at the time the medical malpractice complaint was filed.
[1] The defendants are Louisiana Medical Mutual Insurance Company, Jeffrey A. Lamp, M.D., Robyn B. Germany, M.D., Sandra Moody, NP-C, and Family Health of Louisiana, Inc.
[2] In LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, 1230-31, we explained this suspensive period as follows:

Keeping in mind Plainiol's explanation for the underlying need for the principle of suspension, it is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. Because the Medical Malpractice Act prohibits the filing of a medical malpractice claim against a qualified health care provider prior to panel review, the act specifies that the filing of a request for review before a panel suspends prescription. La.R.S. 40:1299.47(A)(2)(a). Moreover, as provided by statute, the filing of the complaint prevents prescription from lapsing during the pendency of the review process and further suspends prescription from the time of filing until ninety-days following notification to the claimant or his attorney of the panel opinion. Id. After reviewing these special provisions, it is clear that the legislature has equitably provided for suspension to aid the plaintiff in the medical malpractice arena who is prevented by law from the outset from filing suit against the qualified health care provider.... Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.
[3] However, our further holding in Borel lessens the impact of this distinction. As explained in this opinion, by ruling that specific provisions of the Act applied to the exclusion of the general codal articles on interruption of prescription, Borel held that only the suspensive periods provided for in the Act can apply to suspend the prescriptive period of La. R.S. 9:5628. So, although the three year period is prescriptive, it is so only in a limited sense because the general codal articles allowing interruption or suspension of that prescriptive period do not apply.
[4] La. C.C. art. 3462 provides that prescription is interrupted when the obligee commences an action against the obligor in a court of competent jurisdiction and venue.
[5] La. C.C. art. 1799 provides that the "interruption of prescription against one solidary obligor is effective against all solidary obligors, and their heirs."
[6] La. C.C. art. 3503 provides that "[w]hen prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors."
[7] This case is not governed by Guitreau v. Kucharchuk, 99-2570 (La.5/16/00), 763 So.2d 575, which specifically found that there was no conflict between La. R.S. 40:1299.47 and La. C.C. art. 3472, and thus applied art. 3472 to the medical malpractice action. La. C.C. art. 3472 simply provides that a period of suspension is not counted toward accrual of prescription and that prescription commences to run again upon the termination of the suspensive period. The Court in Guitreau applied those guidelines to the suspension of prescription provided for in La. R.S. 40:1299.47, and held that after the ninety-day period was completed, the plaintiffs were entitled to the period of time under La. R.S. 9:5628 that remained unused at the time the request for a medical review panel is filed. There was no conflict as the application of La. C.C. art. 3472 did nothing to interfere with prescription and suspension of prescription provided for under the Act.
[8] Because of our decision on these issues, any discussion of the issue of whether relation back of a pleading belatedly adding a plaintiff under La. C.C.P. art. 1153 is allowed in the absence of a pleading mistake would be dicta. However, we note that our opinion on original hearing addressing the requirements for adding a plaintiff under La. C.C.P. art. 1153 has been vacated.
[1] Defendants also argue that even if there was no conflict with Borel, two of the Giroir factors are not met in this case.
[2] I would also reaffirm our application of the Giroir factors in this matter
[3] I also disagree with the majority's holding that Sarah's survival claim is prescribed. As we held on original hearing, Sarah shares in this cause of action with her sister and mother; therefore, prescription on that cause of action was interrupted when Sarah's sister and mother timely filed suit against the defendants. I also note that allowing the amendment to add Sarah's survival claim will not affect the defendants' liability. The addition of this claim will merely affect the division of any judgment proceeds between the plaintiffs.
[1] Prior to the majority's reliance on Borel as authority, this reaffirmation had no precedential value as Borel on rehearing was a plurality opinion.
[2] As explained by the majority, the defendants in Borel filed a peremptory exception of prescription in respond to plaintiffs' suit, which was filed after the three-year period provided in La.Rev.Stat. § 9:5628 had past. In the hearing on the exception, defendants argued plaintiffs' action was perempted. The district court agreed, granting defendants' exception and dismissing plaintiffs' claim against defendants with prejudice on the grounds of peremption. In its written reasons, the district court stated:

The rules governing the time within which a medical malpractice action can be brought are clearly set forth in La. R.S. 9:5628(A), which provides in pertinent part: No action for damages for injury or death against any physician .... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect or within one year from the date of discovery of the alleged act, omission or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect. (Emphasis added)
La. R.S. 9:5628(A) means that in an action against a physician under the medical malpractice act, the plaintiff has one year from the alleged act, omission or neglect or one year from discovery of the alleged act, omission or neglect within which to bring an action. This one year period is, presumably, subject to all of the normal rules applied to suspension and interruption of prescription found elsewhere in the law.
But the second period of time that must be applied to all actions under the medical malpractice act is "peremptive" in nature and may not be interrupted or suspended. No action may be brought once three years have passed after the alleged act of malpractice under any circumstances.....
* * *
The plaintiffs filed suit on March 28, 2002 only against Lafayette General Medical Center. Plaintiffs did not file suit against Dr. Clinton Young and LAMMICO until March 21, 2005, far past three years from the date of the alleged act, omission or negligence and more than three years even after Mary Borel's demise. The plaintiffs assert that suit was filed after they learned that, as part of its defense, Lafayette General Medical Center plans to offer physician expert testimony to the effect that Dr. Clinton Young's treatment of Mary Borel fell below the standard of care required under the circumstances. Clearly, under these undisputed facts, any action against these defendants is "perempted" under the provisions of La. R.S. 9:5628(A).
[3] In this aspect, a commentator challenged the Court's reliance on the "time honored" Guillory v. Avoyelles Railway Co., 104 La. 11, 28 So. 899 (1900), test which set forth two factors in determining the peremptive nature of a provision: (1) an unusually strong public interest that the right limited exist for only a short time; and (2) the statute in question both created a right of action and stipulated the delay during which it could be exercised. The same commentator asserted that the Guillory test should be discarded altogether as it was created in obiter dicta and arguably was based on mere coincidence. DONALD BARON WIENER. Hebert v. Doctors Memorial Hospital: Three-Year Limit on Exercising Medical Malpractice Claims Held to Be Prescriptive, 61 TUL.L.REV. 941, 947-48 (1987).
[4] Justice Lemmon was the author of the majority opinion in Crier I which held in accordance with Hebert on the issue of the three-year prescriptive period. However, by the rehearing merely months later. Justice Lemmon concurs in the majority opinion on the issue of constitutionality of the statutory provisions, but we see his break from the prescriptive school at this point. From then on. Justice Lemmon has treated the three-year provision as peremptive, a position he advances when he authored this Court's opinion in Spradlin.
[5] Those states were California. Florida, Illinois, Iowa, Louisiana, Ohio, South Dakota, Maryland, Tennessee.
[6] The Court did reverse the court of appeal's holding that plaintiffs' claims were perempted as to those claims arising from malpractice that occurred in 1978 and in 1979, and filed within three years of the malpractice and one year from discovery, finding the claims had not prescribed. Chaney, 432 So.2d at 259-60. Notably, the court of appeal did not address the claims arising from the malpractice in 1978 and 1979.
[7] The Court also cited Billiot v. American Hosp. Supply Corp., 721 F.2d 512 (5th Cir. 1983), for the proposition that appellate cases, albeit federal appellate cases, "assumed" that the statute was prescriptive. Hebert, 486 So.2d at 723.
[8] The opinion stated that plaintiff "argues that the peremptive period provided by the statute does not begin to run until the discovery of the negligent act. This argument completely ignores the wording in the statute," and "plaintiff argues that application of this peremptive provision of L.S.A.-R.S. 9:5628 denies him access to the courts and, therefore, the statute is unconstitutional." Blanchard, 431 So.2d at 43. Notably, although the court found the action was barred, the keycite note includes the phrase by prescription, which is not included in the opinion.